**In the Matter of Barbara E. CUDABACK, Debtor.**

**Barbara E. CUDABACK, Plaintiff,**

v.

**George LANGDALE and United States of America, Department of Treasury, Internal Revenue Service, Defendants.**

**Bankruptcy No. BK81–213.**
**Adv. No. A81–161.**

United States Bankruptcy Court,
D. Nebraska.

Sept. 8, 1982.

James A. Cada, Lincoln, Neb., for plaintiff.

Richard H. Gregory, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C.,

and Sally R. Johnson, Asst. U. S. Atty., Lincoln, Neb., for defendants.

## MEMORANDUM

DAVID L. CRAWFORD, Bankruptcy Judge.

Barbara E. Cudaback, the plaintiff and a debtor in a Chapter 13 debtor-relief proceeding, brought this adversary proceeding against the defendants for a determination that the defendants are in contempt of court for knowingly violating the automatic stay of 11 U.S.C. § 362 and for a determination that monies claimed by her in the amount of $438.73 be returned to her by the defendants.

The order on pretrial conference provides the following uncontroverted facts:

"1. On January 28, 1981, Revenue Officer George Langdale of the Internal Revenue Service served a Notice of Levy on Salary, Wages and Other Income on the Lincoln Telephone Company with respect to a tax debt in the amount of $24,881.05 owed to the United States by Barbara Cudaback.

"2. On February 2, 1981, Barbara Cudaback, through her attorney James Cada, filed a Petition in Bankruptcy under Chapter 13 of the Bankruptcy Reform Act of 1978.

"3. On February 5, 1981, Revenue Officer Langdale served a Release of Levy on the Lincoln Company. The release relieved the Company of any obligation to pay over to the United States any wages, salary or other income then owed or becoming payable to Barbara Cudaback after the effective date of the release which was February 2, 1981.

"4. On February 9, 1981, the Lincoln Telephone Company forwarded a check for $438.73 to the Internal Revenue Service. The check represented wages earned by Barbara Cudaback during the pay period from January 11 through 24, 1981, less wage withholdings and less an amount of wages exempt from levy by statute."

Following submission of the order on pretrial conference, the parties each filed a motion for summary judgment and the matter is now before me on those motions. The order on pretrial conference provides that the declaration of Robert Cockle, dated July 20, 1981, and the statement of Robert Cockle, dated July 17, 1981, could be admitted into evidence. A declaration of Robert Cockle is attached to the motion for summary judgment filed by the defendants. That declaration is dated July 20, 1981, and discloses the following facts:

"1. I have been employed as the payroll supervisor for the Lincoln Telephone & Telegraph Co. at all times relevant to these proceedings.

"2. On January 29, 1981, our office was served with an Internal Revenue Service Notice of Levy with respect to wages of Barbara E. Cudaback, one of the telephone company's employees.

"3. Shortly thereafter, our office received a telephone call from James Cada representing Ms. Cudaback. Mr. Cada indicated that Ms. Cudaback had filed bankruptcy on February 2, and that any wages she had earned should be sent to him rather than to the Internal Revenue Service.

"4. On February 6, our office received a release of the levy as to wages earned by Ms. Cudaback on or after February 2, when the bankruptcy petition was filed.

"5. After receiving the release, I contacted the Internal Revenue Service to ask for advice as to what the telephone company should do in light of the levy, the release, and the conflicting claims to the wages. I spoke with Revenue Officer George Langdale who indicated to me that the Internal Revenue Service only claimed wages earned prior to February 2 in light of the bankruptcy petition. He suggested that we send a check to the Internal Revenue Service for the wages earned prior to that date.

"6. On February 9, our office did in fact mail a check for $438.73 to the Internal Revenue Service for wages earned by Ms. Cudaback prior to February 2."

In addition, there is attached to the defendants' motion for summary judgment a declaration of George Langdale which discloses the following:

"1. I am employed as a Revenue Officer with the Internal Revenue Service in Lincoln, Nebraska. I have been a Revenue Officer since July, 1964, and have been assigned to work in Lincoln since February, 1967.

"2. In connection with my official duties, I was assigned to collect taxes, penalties, and interest owed to the United States by Barbara E. Cudaback. The taxes were social security (F.I.C.A.) taxes and income taxes withheld from wages of Ms. Cudaback's employees for the fourth quarter of 1978, all quarters of 1979, and the first three quarters of 1980. Also involved were unemployment taxes (F.U.T.A.) for 1979.

"3. In connection with collecting these taxes, I got in touch with Ms. Cudaback. However, no satisfactory progress toward paying the tax liability was made. Therefore, on December 11, 1980, I mailed to her a final notice that the taxes were due and that seizure of her assets would follow if, payment was not made.

"4. In working on this case, I learned that Ms. Cudaback was employed by Lincoln Telephone & Telegraph Co. Therefore, on January 28, 1981, I telephoned Robert Cockle at Lincoln Telephone concerning a levy on Ms. Cudaback's wages. I was informed that Lincoln Telephone employees would be paid on Friday, January 30, with respect to wages earned from Sunday, January 11 through Saturday, January 24.

"5. In speaking with Mr. Cockle, I informed him that the Internal Revenue Service did not claim Ms. Cudaback's entire wages and that she was entitled to receive a portion of the wages she had earned. See 26 U.S.C., Section 6334(a)(9), (d).

"6. On January 28, 1981, the taxpayer owed the United States $24,881.05. I prepared a Notice of Levy on Wages, Salary, and Other Income showing her tax debts, and on the above date I served the levy on Lincoln Telephone. A copy of the levy is attached to my Declaration as Exhibit 1.

"7. On January 29, I received a call from Lincoln Telephone saying that Ms. Cudaback's net pay was $713.50, and that the company would cut new checks in light of the statutory exemption.

"8. On February 2, 1981, our office received a telephone call from James Cada, Ms. Cudaback's attorney. He left a message that his client had filed a petition under Chapter 13 of the Bankruptcy Reform Act of 1978.

"9. In view of the fact that Chapter 13 proceedings had been filed, I consulted with my Group Manager regarding the effect of bankruptcy proceedings on the Internal Revenue Service levy. I was told that the petition did not affect the levy as to pre-petition earnings. However, it did affect our rights as to post-petition wages. Therefore, I was instructed to release the levy as to all post-petition paychecks. On February 5, I prepared a Release of Levy as per these instructions, and I sent it to Lincoln Telephone. A copy of the Release is attached as Exhibit 2.

"10. After mailing the release, I received a telephone call from Robert Cockle. He asked me for advice as to what to do concerning the levy. He mentioned to me that Attorney Cada had called Lincoln Telephone and had indicated that all wage checks for Ms. Cudaback should be sent to him. I told him that the Government claimed a portion of the wages relating to the January 30 payday regardless of the petition, but that we made no claim to later paychecks. I also mentioned to him that there was a statute

which would afford protection to the Telephone Company if it honored the levy, and that the language of the statute was provided on the reverse side of his copy of the levy. See 26 U.S.C., Section 6332(d).

"11. My statements to Mr. Cockle were offered in the spirit of advice. At no time did I demand payment from Lincoln Telephone. Nor did I at any time make any threat as to what would happen if the Telephone Company did not pay the money to the Internal Revenue Service.

"12. After my conversation with Mr. Cockle, I received on February 9 a check from Lincoln Telephone representing Ms. Cudaback's net pay, less statutory exemption. I forwarded the check in the amount of $438.73 for deposit in the United States Treasury as soon as I received it.

"13. At no time after I learned of the petition did I take any official act to collect or recover the tax debts owed by Ms. Cudaback to the United States.

"14. My advice to Robert Cockle when he called me was based on instructions which I received from my supervisors and which I believed to be accurate, correct, and proper in all respect."

As presented, the central issue is whether the defendants violated the automatic stay of 11 U.S.C. § 362 in obtaining or exercising control over the wages of the plaintiff. In this regard, the defendants point to a series of cases, well-illustrated by *Cross Electric Co. v. U.S.*, 8 B.C.D. 493, 11 B.R. 998, 664 F.2d 1218 (4th Cir. 1982), which suggest that a pre-bankruptcy levy by the Internal Revenue Service deprives the property upon which the levy is made of its character as "property of the estate" under 11 U.S.C. § 541. Thus, the defendants argue that, since this is not property of the estate in view of the pre-bankruptcy levy, the automatic stay of 11 U.S.C. § 362 does not operate against their conduct with the wages. In particular, defendants rely upon *Matter of Douglas* [*Douglas v. U.S.*] 10 B.R. 283, 7 B.C.D. 690, 4 C.B.C.2d 533 (D. Neb.,

Crawford, B.J. 1981). *Douglas,* they suggest, concludes that a pre-petition levy by the IRS deprives the property of its character as property of the estate, and, thus, the right to compel its turnover under 11 U.S.C. § 542. Having reviewed *Douglas,* in my view it is improperly decided and misconstrues the statutory scheme of the Bankruptcy Code and, in particular, the interplay between 11 U.S.C. § 542 which deals with the ability to compel turnover and 11 U.S.C. § 541 which deals with "property of the estate". The error in *Douglas* is the conclusion:

"... if the debtor does not have the right to possess or use the property at the commencement of the case, a turnover action cannot be a tool to acquire such rights."

In my view, the error of *Douglas* is that it superimposes on the types of property described in § 541 the test of whether a debtor could "use, sell, or lease" the property. This seems improper.

A better reading of § 542 is that property for which turnover may be compelled is simply the kind of property under § 363 which a trustee could "use, sell or lease", that is, "property of the estate". Once the property is found to be of a type which the trustee could "use, sell or lease", turnover lies under § 542. At that point, a determination must be made of whether the trustee may "use, sell or lease" the property, given the various subsections of § 363. See *U.S. v. Whiting Pools, Inc.*, 8 B.C.D. 1138, 674 F.2d 144 (2d Cir. 1982). For example, if relief from the stay has been granted as against the party claiming an interest in the property, subsection (d) of § 363 may prohibit its use by the trustee. Similarly, if request is made for adequate protection by the party claiming an interest in the property and adequate protection cannot be provided, the test of subsection (e) may not be met.

In summary, the test of what is property of the estate lies solely in § 541

and the test of whether a trustee or a debtor in an appropriate debtor-relief proceeding may use, sell or lease the property lies in § 363. Accordingly, to the extent that *Matter of Douglas, supra,* is inconsistent with the foregoing, it is overruled.

██ Turning attention then to the facts before me, the issue is whether the wages, held by the employer on the date of the filing of the petition for relief in this Chapter 13 and subject at that date to the prepetition levy are "property of the estate". I conclude that they are. Property of the estate under § 541 includes:

> ". . . all legal or equitable interests of the debtor in property as of the commencement of the case."

At a minimum, the United States Supreme Court has concluded that title to property seized or levied upon does not pass simply by virtue of the levy or seizure. *Bennett v. Hunter,* 76 U.S. 326, 19 L.Ed. 672 (1869); *In re Brewster-Raymond Co.,* 344 F.2d 903 (6th Cir. 1965). To suggest that the wages earned by this plaintiff in the hands of her employer on the date of the petition are not something in which she retains a legal or equitable interest seems strained, notwithstanding the impact of an Internal Revenue Service levy. The conclusion resulting from the foregoing is that the wages were property of the estate on the date of the filing of the Chapter 13 petition and, thus, became subject to the automatic stay of 11 U.S.C. § 362.

The action of the Internal Revenue Service agent in contacting the employer to obtain a portion of those wages and the action of the Internal Revenue Service in forwarding for deposit the check it received constitute a violation of § 362(a) and, thus, are actionable in this adversary proceeding.

I turn now to the issue of the appropriate remedy. The plaintiff has asked for alternative relief, the first request being that the wages improperly obtained be returned. That relief can be granted by a separate order directing the return of the monies.

The plaintiff has also prayed that George Langdale be held in contempt. The facts before me do not justify imposition of that sanction in view of the fact that the plaintiff can be made whole by virtue of the order which will be entered compelling return of the monies.