**In re SUPPLIERS, INC., f/d/b/a J & H Manufacturing Co., Inc., Debtor.**

**Arthur B. ROUSE, Jr., Trustee, Plaintiff,**

v.

**UNITED STATES of America, et al, Defendants.**

**Bankruptcy No. 80–00365.**
**Adv. No. 80–0137.**

United States Bankruptcy Court,
E.D. Kentucky,
at Lexington.

June 4, 1984.

Arthur B. Rouse, Jr., Rouse & Fugazzi, PSC, Lexington, Ky., for debtor.

Jerry D. Truitt, Sturgill, Turner & Truitt, Lexington, Ky., for IBM.

Gary L. Stage, Stoll, Keenon & Park, Lexington, Ky., for First Sec. Nat. Bank and Trust Co.

Peter M. Davenport, Asst. U.S. Atty., Lexington, Ky., for U.S. I.R.S.

Michael J. Salem, Tax Division, U.S. Dept. of Justice, Washington, D.C., for U.S.

Ryan M. Halloran, Frankfort, Ky., for Com. of Kentucky Div. for Unemployment Ins.

Walter C. Cox, Jr., Fowler, Measle & Bell, Lexington, Ky., for Thomas Lengal.

### MEMORANDUM OPINION

JOE LEE, Bankruptcy Judge.

This case is before the court on the motion of the trustee for summary judgment against the Internal Revenue Service and International Business Machines Corporation and on the motion of the United States of America for summary judgment against the trustee. In order to rule on these motions, the court must determine whether, as a matter of law, an account receivable levied on by the Internal Revenue Service prior to the filing of the bankruptcy petition herein and received by the Internal Revenue Service after the filing of said petition constitutes "property of the estate" for purposes of section 541 of the Bankruptcy Code, 11 U.S.C. § 541.

FINDINGS OF FACT:

The parties have agreed to the following facts:

On April 23, 1980 and April 29, 1980, the Internal Revenue Service (IRS) served notices of levy on International Business Machines Corporation (IBM) for money owed by IBM to the taxpayer, Suppliers, Inc.

On May 16, 1980, Suppliers, Inc. filed its petition in bankruptcy under chapter 7 of the Bankruptcy Code.

On May 27, 1980, IBM paid over to the IRS $23,551.57 pursuant to the levies served upon it.

Additionally the court finds that, by virtue of certain notes, security agreements and financing statements, First Security

National Bank and Trust Company (First Security) holds a perfected security interest in and lien upon all accounts receivable of the debtor, Suppliers, Inc., including the account owed by IBM to Suppliers, Inc. The court further finds that before the IRS served its notice of levy on IBM First Security had notified IBM of its security interest and had requested that monies owed to the debtor by IBM be paid to First Security.

It appears from the record that Thomas Lengal (Lengal) obtained a judgment against Suppliers, Inc. and garnished the account receivable owed by IBM to Suppliers, Inc. before the IRS served its notice of levy on IBM. If the order of garnishment was properly served on IBM, Lengal had an execution lien in the amount of $13,308.80 which predates and is superior to the lien of the IRS.

It also appears from the record that wage claims have been filed by more than 50 employees of Suppliers, Inc. The trustee asserts by separate pleadings that the lien of said employees for these wage claims takes precedence over the security interest of First Security and seeks to preserve this lien for the benefit of the estate ahead of the security interest of First Security.

CONCLUSIONS OF LAW:

As grounds for its motion for summary judgment filed December 8, 1980, the United States of America asserts that, as a matter of law, property levied on prior to the filing of the bankruptcy petition does not constitute "property of the estate" under section 541 of the Bankruptcy Code, 11 U.S.C. § 541.

As grounds for his motion for summary judgment filed December 12, 1980, the trustee asserts that, since the IRS merely served notices of levy on IBM prior to the filing of the debtor's petition but did not receive funds from IBM pursuant to said levies until approximately 11 days after the filing of the debtor's petition, the funds in question are property of the estate which the IRS wrongfully seized from IBM and which the IRS should return, with interest, to the trustee.

In the case of *United States v. Whiting Pools, Inc.*, 462 U.S. 1, 103 S.Ct. 2309, 76 L.Ed.2d 515, 10 B.C.D. 705 (1983), the Supreme Court determined in a chapter 11 case the bankruptcy court has power under section 542 of the Bankruptcy Code to order the IRS to turn over tangible assets of the debtor which the IRS has levied upon and seized prior to bankruptcy when such tangible assets are necessary to the reorganization of the debtor. Such property is property of the estate under section 541 of the Bankruptcy Code because a tax levy or seizure does not transfer ownership of the property to the IRS.

> The Service's interest in seized property is its lien on that property. The Internal Revenue Code's levy and seizure provisions ... are special procedural devices available to the IRS to protect and satisfy its liens, ... They are provisional remedies that do not determine the Service's rights to the seized property, but merely bring the property into the Service's legal custody .... Ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale.

*Id.* 462 U.S. at ———–———, 103 S.Ct. at 2316–17, 10 B.C.D. at 711–12. The Court expressed no view on whether section 542 has the same broad effect in proceedings under chapters 7 and 13 of the Bankruptcy Code. *Id.* 462 U.S. at ———, 103 S.Ct. at 2315 n. 17, 10 B.C.D. at 710 n. 17.

In the present case, the debtor filed its petition under chapter 7, the debtor's tax liability appears to exceed the amount received by the IRS, and the property received by the IRS is a liquid asset. However, based on the discussion of federal tax levies in general and the case of *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), in particular in *Whiting Pools*, it appears that the Supreme Court has *not* decided that a levy is tantamount to transferral of ownership of property to the Government or that a bankrupt-

cy court has no power to order a turnover on facts such as those in the present case.

This case also differs from *Whiting Pools* in that the Government did not receive physical possession of the asset until several days after the order for relief was entered. Admittedly, there is a distinction between seizure of tangible personal or real property which must be sold to satisfy or extinguish any debt and the seizure of property which does not need to be sold. One view is that, since a sale is not necessary, the Government acquires title to cash or an account receivable upon seizure and that seizure is effected by serving a notice of levy. Another view is that more than service of a notice of levy is required to seize such property and/or to transfer title to the Government.

This court agrees that more than the mere filing of a notice of levy is necessary to transfer title to the Government.

Section 6331 of the Internal Revenue Code, 26 U.S.C. § 6331, states in pertinent part as follows:

(a) Authority of Secretary—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax ...

(b) Seizure and sale of property—The term "levy" as used in this title includes the power of distraint and seizure by any means. A levy shall extend only to the property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

The wording of the above statute strongly suggests that "seizure," as well as "sale," is different and distinct from "levy." In situations where the Secretary may levy upon property the Secretary also may seize and sell property. The Secretary has three separate powers; the power to levy, the power to seize, and the power to sell.

In *In re Barbara E. Cudaback,* 22 B.R. 914, 9 Bankr.Ct.Dec. (CRR) 695 (Bankr.D. Neb.1982), the court held that wages which were earned by a chapter 13 debtor prepetition, which were subject to a prepetition levy by the IRS, and which were held by the debtor's employer on the date of the filing of the petition for relief were property of the estate pursuant to 11 U.S.C. § 541. "To suggest that the wages earned by the plaintiff in the hands of her employer on the date of the petition are not something in which she retains a legal or equitable interest seems strained, notwithstanding the impact of an Internal Revenue Service levy." *Id.* 22 B.R. 914, 9 B.C.D. at 697. The wages were therefore subject to the automatic stay of 11 U.S.C. § 362. The postpetition action of the IRS agent in contacting the employer to obtain a portion of those wages and the action of the IRS in forwarding for deposit the check it received constituted a violation of the automatic stay, the appropriate remedy for which was a turn over order pursuant to 11 U.S.C. § 542 directing the IRS to return the wages to the debtor.

In *In re Dunne Trucking Co.,* 32 B.R. 182, 10 Bankr.Ct.Dec. (CRR) 1291 (Bankr. N.D.Iowa 1983), the IRS served a notice of levy on a bank at 1:55 p.m. on January 28, 1982, claiming all of the funds of Dunne on deposit in a checking account at the bank and demanding immediate delivery of the balance in said checking account. An officer of the bank refused the demand and advised the IRS that the bank would issue a check for the balance of the account on the following bank day, after the bank had determined the correct balance in the account upon completion of the posting of items presented for payment against the account on January 28. Dunne filed its chapter 11 petition in bankruptcy at 8:00

a.m. on January 29, 1982. The bank, sometime after 8:00 a.m. and before noon on January 29, 1982, issued its check for the entire balance in Dunne's checking account and mailed it to the IRS.

The debtor argued that actual physical seizure would have been required in order to transfer property rights before the petition was filed, while the IRS asserted that service of the notice of levy effected a transfer of ownership. The court concluded that, as of the date of the filing of the petition, the IRS did not have actual possession of the debtor's checking account; that, absent notice of seizure prior to filing of the bankruptcy petition, the notice of levy did not complete the levy processes on the checking account; and that the notice of levy by itself did not extinguish the debtor's rights in the checking account. Therefore, despite the IRS's actual possession of the account subsequent to the filing of the bankruptcy petition, the account was property of the estate within the meaning of section 541 of the Bankruptcy Code and the account was subject to the turnover provisions of section 542 of the Bankruptcy Code.

In a discussion of the IRS's lien and levy procedures, the court in *Dunne* explained: "Although Section 6331 grants the Service extraordinary power to seize property to satisfy a tax liability, it does not prescribe how a levy should be made. The levy 'includes the power of distraint and seizure by any means ....' While the statute grants the Service the power of distraint and seizure 'by any means,' as a matter of practice, the Service serves a notice of levy to seize property." After levy, but before sale, a notice of seizure and a notice of sale must be served upon the owner or holder of rights to have a valid sale .... Failure of, or defect in, either notice causes the sale to be invalid. ... Although a sale is not possible when the property is cash or a cash equivalent, ... notice of seizure still appears to be a limitation on the Service's authority under § 6331(a). This is because a levy is not considered complete unless a notice of seizure is sent to the owner or holder of rights to property levied upon. I.R.C. § 6502(b) (CCH 1981). If there is a delay in this notice, the statute of limitations for the collection of tax after assessment will continue to run, rendering the tax ultimately uncollectible ....

Notice of seizure appears then to be not only a condition precedent to an effective sale, but also to be (sic) completion of the levy proceedings. The notice set forth in I.R.C. § 6355 (CCH 1981) "can be viewed as protection of the taxpayer's continued interest in the seized property."

Since the debtor's account in this case was not actually seized, and therefore no notice of seizure could be sent, until after filing of the petition in bankruptcy, the 'levy' effected by the Notice was not complete ....

*Id.* 32 B.R. 182, 10 B.C.D. at 1293.

The court in *Dunne* also noted:

It could be argued that notice of seizure is merely administrative and does not substantively affect the Service's rights to the property. However, levy, as defined under I.R.C. § 6502, triggers not only the debtor's rights of redemption, but also the rights of any other party with an interest in the seized property. *See* I.R.C. §§ 6337 and 6532 (CCH 1981). If these rights are not triggered, Notice of Levy in this situation would give the Service an advantage that, in at least certain circumstances, is not warranted under the Internal Revenue Code ....

*Id.* 32 B.R. 182, 10 B.C.D. at 1293, n. 8.

Based on the facts of this case and the cases and reasoning discussed above, the court finds that the monies owed by IBM to the debtor on May 16, 1980, the date on which the debtor filed its petition in bankruptcy, are property of the estate within the meaning of section 541 of the Bankruptcy Code, 11 U.S.C. § 541, and that said monies are subject to the turnover provisions of section 542 of the Bankruptcy Code, 11 U.S.C. § 542.

Further, it appears to the court that, even if the IRS had completed levy on said

property, the IRS had no right to the property because of the prior interest of First Security and, possibly, the prior interest of Lengal or the employees of the debtor in said property.

Whether or not the lien of the employees of the debtor for wages under state law is superior to the security interest of First Security, under section 724(b) of the Bankruptcy Code, 11 U.S.C. § 724(b), the tax lien of the IRS is subordinated to these wage claims.[1]

The only conceivable way to protect the various interests in this case and to assure appropriate distribution of the assets in this case is to order the IRS to turn over the property in question.

The motion of the trustee for summary judgment against the United States of America, Internal Revenue Service, is sustained.

The motion of the United States of America, Internal Revenue Service, for summary judgment against the trustee is overruled.

Undisbursed monies remaining in the possession of IBM should be remitted to the trustee.

---

1. By definition, a lien includes a levy. See section 101(28) of the Bankruptcy Code, 11 U.S.C. § 101(28).