**In re CLEVELAND GRAPHIC REPRO-
DUCTION, INC., Debtor.**

**Bankruptcy No. B87–310.**

United States Bankruptcy Court,
N.D. Ohio, E.D.

Oct. 19, 1987.

**820**

Kathryn Roseen, Sindell, Rubenstein, Einbund, Pavlik and Novak Co., L.P.A., Cleveland, Ohio, for debtor, debtor-in-possession.

Richard J. French, Asst. U.S. Atty., Cleveland, Ohio, for I.R.S.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

Herein, the Court is asked to determine whether a prepetition levy by a taxing authority on a debtor's cash or cash equivalent leaves the debtor with a recoverable interest in the seized property. The matter arose upon the motion of Cleveland Graphic Reproduction, Inc. (Debtor) for turnover by the Internal Revenue Service (IRS) of funds and accounting records. Upon due notice served on all parties entitled thereto, a hearing was had to the Court. The Court, having heard the arguments of counsel and reviewed the relevant pleadings and law appertaining thereto, renders the following findings and conclusions pursuant to Rule 7052 of the Bankruptcy Rules:

### I.

The Court has jurisdiction under provisions of 28 U.S.C. § 1334, and the matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (F). The pertinent facts are generally undisputed. On January 30, 1987, the Debtor caused to be filed its petition for reorganization under Chapter 11 of the Bankruptcy Code, and an order for relief was granted. Prepetition, on November 20, 1986, the Internal Revenue Service (IRS) attached certain of the Debtor's corporate bank accounts. Debtor indicates the attachment is approximately $20,000.00. Later, during the same month, the IRS contacted certain of the Debtor's accounts receivable and directed those entities to pay the IRS directly for any amounts due and owing to the Debtor. An unknown amount was recovered by the IRS as a result of those contacts.

Again, on January 22, 1987, the IRS attached the Debtor's corporate checking account, receiving an estimated $50.00. Also in January of 1987, the IRS notified a substantial number of the Debtor's accounts receivable and again directed payments to be made by them to the IRS, rather than to the Debtor. In that effort, it is estimated by the Debtor that $30,000.00 was received by the IRS. In order to obtain definite dollar figures for the amounts attached and received by the IRS from Debtor's accounts receivable, this motion ensued.

## II.

The principal issue for determination is whether a prepetition levy by the IRS on the Debtor's cash or cash equivalent leaves the Debtor's estate with a recoverable interest in the seized property? In furtherance of its motion, Debtor alleges that the IRS may have continued to receive its accounts receivable postpetition notwithstanding Debtor's Chapter 11 filing. Debtor further alleges that the IRS's conduct is subject to turnover under § 542 and also is violative of the priority scheme set forth under 11 U.S.C. § 507, particularly where the Debtor owes substantial amounts in employee wages and benefits. Additionally, Debtor alleges that the IRS's attachments and other recoveries constitute preferences, as defined by § 547 [11 U.S.C. § 547]. In response, the IRS wholly denies that any payments received by it are preferences, as the subject payments were made and received in the ordinary course of business. The IRS further contends that the payments received were the results of nonavoidable statutory liens. Additionally, the IRS alleges that, if turnover is required, any money it received is to be treated under § 363 of the Code and is entitled to adequate protection.

The IRS contends that the amounts levied upon were not preferences but, rather, were allowed under relevant provisions of § 547(b)(5)(A) and (C) as well as § 547(c). Specifically, under § 547(c), the IRS contends that its collection of taxes and the Debtor's obligation to pay taxes are within the ordinary course of business exception to a preference action. Further, under § 547(c)(6), the IRS avers that the subject levies were based upon nonavoidable statutory liens, and that it is entitled to adequate protection as is allowed under § 363 of the Code.

The Debtor seeks a turnover pursuant to §§ 542 and 543 of the Code. Under § 542, the following is noted:

§ 542. Turnover of property to the estate.

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

An examination of § 542(a) reveals that this particular section requires anyone holding estate property on the date of petition filing or property that the debtor may use, sell, or lease under § 363 to deliver it to the debtor. (See, H.Rept. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) p. 369, U.S.Code Cong. & Admin. News 1978, p. 5787). This section further requires an accounting of property taken. There is an exception to this turnover requirement only if the subject property is of inconsequential value to the estate. Herein, the IRS does not dispute that it held estate property on the date of petition filing. Nor does it allege that the property taken is of inconsequential value or benefit to the debtor's estate. The specific form of the subject property herein is cash. The fact that the Debtor owes both wage and benefit claims which are to be prioritized under § 507 is undisputed. Citing the U.S. Supreme Court's holding in *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1963), the IRS contends the court's turnover power is not exercisable against the IRS, since the subject property is cash and the Debtor does not retain sufficient interest therein. The IRS further cites *Phelps v. U.S.*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975) and *Cross Electric Co. v. U.S.*, 664 F.2d 1218 (4th Cir.1981), for the proposition that a levy on cash or cash equivalent effectively leaves the taxpayer with no interest in the seized property. For the reasons stated herein, those cases are distinguished.

In the present case, § 542 is sufficient to properly effect a turnover. Under the Supreme Court's decision in *Whiting Pools, supra*, at 209, 103 S.Ct. at 2315–16, the Court authorized a turnover under § 542(a), as that section applies to an entity

other than a custodian. Section 101(14) of the Code [11 U.S.C. § 101(14) ] is clear to state that the term "entity" used in § 542(a) includes a governmental unit.

### III.

▉ The Debtor contends that the IRS's transfer of its funds during the ninety-day period preceding petition filing constituted a preferential transfer under § 547 which is voidable where the following conditions exist: (1) The transfer is to or for the benefit of a creditor; (2) is for an antecedent debt owed by the debtor; (3) was made while the debtor was insolvent, (4) was within 90 days of the petition filing; and (5) caused the creditor to receive more than he would receive had the case been filed under Chapter 7. [11 U.S.C. § 547(b) ]. Although there is a rebuttable presumption of insolvency during the 90–day preference period, the burden of persuasion as to all five elements is to be borne by the debtor. That burden is to be carried by clear and convincing evidence. At bar, the debtor presented no evidence to meet its burden. Rather, it chose to rely on the allegations set forth in its motion. It is conceded by the IRS that some of the subject transfers occurred within the preferential period. It is further uncontested that the IRS claim was based upon an antecedent debt owed by the debtor. What is uncertain and unproved is whether the amount transferred by the IRS caused it to receive more than it would have been entitled to receive had the case been filed under Chapter 7. The prerequisite elements which give rise to a preferential transfer are in the conjunctive. Without clear and convincing proof as to the existence of each element the debtor's burden of proof is not met, and the property cannot be deemed a preferential transfer.

▉ Equally deficient are the IRS's § 547(c) defenses to a preferential transfer. Under § 547(c)(2)(A), the IRS contends its levies were payments of a debt incurred by the Debtor in the ordinary course of business or financial affairs of itself and the Debtor. The IRS fails to consider that the three nonavoidable requirements of § 547(c)(2) are conjunctive and are not exclusive of each other. Therein, a "trustee may not avoid under this section a transfer:

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms. [11 U.S.C. 547(c)(2)(A)(B) and (C) ]." [11 U.S.C. § 547(c)(2) ].

▉ The IRS's levies must be examined in light of all of the above conjunctive requirements of § 547(c)(2). Unquestionably, the Debtor incurred the tax obligations in the ordinary course of its business dealings with the IRS. That satisfies § 547(c)(2)(A), only. It is unchallenged that the IRS has a right to collect payments of various taxes, including ones owed by the Debtor. The payment of taxes by the Debtor and receipt of same by the IRS is certainly within the ordinary course of business or financial affairs of the Debtor and the IRS. Herein, however, what occurred was not a "payment" but, rather, was a levy. The levies made, however, were not made in the "ordinary course of business" and, similarly, were not made according to ordinary business terms. Payment of tax obligations is clearly within the ordinary course of business or financial affairs of a debtor, but a seizure of funds as a result of a lack of such payments is not in the "ordinary course". In these latter instances, § 547(c)(2)(B) and (C) were not satisfied. Thusly, the IRS cannot justifiably support its levies as being nonavoidable under § 547(c).[1] The purpose of § 547(c)(2) is to leave undisturbed

---

1. According to government counsel, the IRS had levied upon $36,814.95 as of February 13, 1987. He further represented that all of the levies were made prepetition and within the ninety-day preference period. The IRS's proof of claims is disputed and totalled $218,000.00. Such claims were for both secured and priority claims.

normal financial relations since doing so does not detract from the general policy of the preference action which is to discourage unusual actions by either the debtor or its creditors. No. 595, H.Rept. at 373–374, quoted in 4 *Collier* on Bankruptcy ¶ 547.10 at 547–43 (15th ed. 1987); *In re Craig Oil Co.*, 785 F.2d 1563 (11th Cir.1986). Further, untimely payments uniquely place such payments outside the ambit of the ordinary course as a matter of law. *See, In re Gold Coast Seed Co.*, 24 B.R. 595, 597 (9th Cir. BAP 1982); *accord, In re Ewald Bros., Inc.*, 45 B.R. 52, 59 (Bankr.D. Minn.1984). Herein, it is unchallenged that the Debtor owed the IRS for unpaid prepetition tax obligations. Accordingly, the transfers in the matter, *sub judice*, were not made in the ordinary course due to the method of payments (levies) being unusual and also due to the fact that the taxes were not paid when due.

▆▆▆▆ Additionally, the IRS contends that its levies are not voidable as they constituted statutory liens under § 547(c)(6), and as defined under § 101(47) of the Code. Section 547(c)(6) provides:

> (c) The trustee may not avoid under this section a transfer—
> (6) that is the fixing of a statutory lien that is not voidable under section 545 of this title;

The IRS's reliance upon § 547(c)(6) is misplaced. The Debtor does not question the validity of the IRS's tax lien. The levies did not "fix" a statutory lien as the IRS's statutory lien was perfected prior to the subject levies. Therefore, the transfers (levies) made are voidable since the IRS already had a valid statutory lien. The gravamen of the IRS's conduct was that it exceeded the mere fixing of a lien. Rather, IRS took specific steps to satisfy an existing tax lien. The fixing of a tax lien by notice and filing is not a preference and is so excepted by § 547(c)(6). However, the § 547(c)(6) exception extends only to the fixing of a lien, and not to its satisfaction. *See, Nowak*, Am.Bank.L.J., Vol. 55, p. 318.

A statutory lien is one arising solely by force of statute on specified circumstances or conditions. 11 U.S.C. § 101(47). Specifically, tax liens are included within the definition of statutory liens. H.Rept. No. 989, 95th Cong.2d Sess. 27, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5813; *See also*, 2 *Collier* on Bankruptcy ¶ 101.10 at 101–38 (15th Ed.1986). Under § 547(c)(6), a trustee may not avoid a transfer that is the fixing of a statutory lien that is not avoidable under § 545. Section 545 applies to liens that first become effective upon the bankruptcy or insolvency of the debtor or are not enforceable on the date of petition against a bona fide purchaser. For the reasons stated above, such provision is not pertinent to the IRS's conduct and the levies are voidable.

Under non-bankruptcy law, a tax lien arises after the debtor has failed to pay taxes owed and a demand has been made by the IRS for payment, pursuant to IRC § 6321. The lien continues until the assessed liability is satisfied or becomes unenforceable by a lapse of time. IRC § 6322. In the matter at bar, the Debtor does not contend that there was a failure to follow proper procedure in the seizure of its accounts. Debtor simply wants the assets returned. It is also unquestioned that the sum of the property seized is substantially less than the amount of IRS's lien.[2]

### IV.

Section 541 of the Code [11 U.S.C. § 541] defines the extent of estate property.[3] In promulgating this particular section, Congress deliberately expanded the scope of estate property far in excess of that allowed in § 541's predecessor, § 70(a) of the Bankruptcy Act of 1898. Section 541 allows all legal and equitable interests of a debtor, wherever located, to be included in the estate which existed as of the commencement of the case. The legislative history of § 541 clearly demonstrates that the Congress desired an all-inclusive estate, as opposed to a much more limited estate

---

**2.** IRS claims a tax lien of $218,000.00, while the Debtor estimates funds seized in the amount of $50,000.00.

**3.** 11 U.S.C. § 541. Property of the estate.

earlier allowed by § 70(a) of the Act. *See,* S.Rept. No. 989, 95th Cong., 2d Sess. 8, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5868; H.Rept. No. 595, 95th Cong., 1st Sess. 367 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6323–24. Relating § 541 to the present case, § 542 requires a possessor of property which the debtor may use, sell, or lease under § 363 to return such property to the debtor, subject to certain exceptions. In a reorganization, such as the present one, the return of estate property is crucial if the debtor is to have any reasonable prospect of rehabilitating itself. The subject property being cash, it is quite apparent that such property is essential for the continuation of Debtor's business. Where the property sought to be included is essential to rehabilitating the Debtor's business, such property must be included in the Debtor's estate and extends even to property of a creditor with a secured interest. *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 203, 103 S.Ct. 2309, 2312–13, 76 L.Ed.2d 515 (1983). Because of this impact upon secured creditors, Congress provided adequate protection for secured creditors under § 363(e). *Id.,* at 204, 103 S.Ct. at 2313. The interplay between § 542 and § 363(e) subserves Congress's goal of encouraging reorganizations and its choice of methods to protect secured creditors. *Id.* Further, the scope of estate property is so pervasive that it includes property which was not possessed by the debtor at the time of bankruptcy filing. Thusly, § 541 is so enacted to allow inclusion into the estate of property made available by other sections of the Code. *Id.,* at 205, 103 S.Ct. at 2313–14; H.Rept. No. 95–595, p. 367 (1977). Moreover, none of § 542's limitations require the debtor to have a possessory interest in the property at the time of bankruptcy filing. *Id.*

■ Construing the above statutory scheme of § 541, § 542 and § 363(e) to the present case, herein is a debtor attempting to rehabilitate an ongoing business concern. The intangible property (cash), which was levied upon by the IRS both prepetition and post-petition constitutes estate property under § 541 and is recoverable under § 542, as the Debtor continued to be vested with an interest in the property although dispossessed of the property at the commencement of its case. The levies effected by the IRS, although proper under IRC § 6321, did not extinguish the Debtor's equitable interest in the property levied. Further, to the extent that some levies may have occurred post-petition, they are affected by the stay provision of § 362.

■ The IRS, although a governmental entity, is subjected to § 542(a) requirements as is any other entity which is defined at § 101(14). As such, the IRS is to be accorded the same treatment as any other creditor, respecting § 542 requirements. The legislative history of § 542 further reveals that the Congress was particularly protective of tax collecting authorities by allowing them adequate protection under § 363(e), enhanced priorities for unsecured tax claims under § 507(a)(7), and by the nondischarge of tax liabilities under § 523(a)(1). *See,* S.Rept. No. 95–989, pp. 14–15 (1978). As the U.S. Supreme Court aptly stated:

> Nothing in the Bankruptcy Code or its legislative history indicates that Congress intended a special exception for the tax collector in the form of an exclusion from the estate of property seized to satisfy a tax lien. *Whiting Pools, Inc., supra,* at 209, 103 S.Ct. at 2316.

Although the Internal Revenue Code contains certain enforcement provisions for the IRS to enforce its tax liens [26 U.S.C. §§ 6321–6326, those provisions do not convey ownership of the seized property to the IRS. *Id.,* at 210, 103 S.Ct. at 2316.[4] The IRS's interest is that of a lien on the seized property. *See,* 26 U.S.C. § 6321. Until a sale of the seized property is effected, the property continues to be that of the debtor and, thusly, is subject to turnover under § 542(a). Nonetheless, when there is a prepetition seizure by a taxing authority involving a reorganizing debtor under Chapter 11, and such property is caused to be

4. *See also,* 26 U.S.C. §§ 6331 and 6332.

returned to the estate, the IRS's lien is not dissolved, nor is its creditor status adversely affected. *Whiting Pools, Inc., supra,* at 211, 212, 103 S.Ct. at 2316–17, 2317.

## CONCLUSION

As reasoned above, the subject property is property of the Debtor's estate pursuant to § 541 and, consequently, is subject to turnover as afforded under § 542 of the Code. Addressing the Debtor's allegations of preferential transfers, the Debtor has failed to meet the required burden of proof to sustain such allegations. On the other hand, the IRS failed to adduce sufficient evidence to establish that its lien constituted a non-avoidable statutory lien pursuant to § 547(c)(6). The lien of the IRS survives post-petition but provides no automatic ownership rights to the IRS.

Accordingly, the Debtor's motion for turnover and an accounting is hereby granted, subject to the Debtor's ability to demonstrate that there exists adequate protection for the IRS's claim. To that end, a hearing will be scheduled forthwith.

IT IS SO ORDERED.