In re CHALLENGE AIR INTERNA-
TIONAL, INC., Debtor.

UNITED STATES of America,
Appellant,

v.

CHALLENGE AIR INTERNATIONAL,
INC. and American Express Travel Related Services Company, Inc., Appellees.

No. 90–1951–CIV.

United States District Court,
S.D. Florida.

Jan. 3, 1991.

David R. Softness, Míami, Fla., for debtor.

Robert Roth, Miami, Fla., Chapter 11 Trustee.

Robert F. O'Malley, Miami, Fla., for appellee American Exp.

Jose F. DeLeon, U.S. Dept. of Justice, Tax Div., Washington, D.C., for appellant U.S.—I.R.S.

ORDER AFFIRMING BANKRUPTCY
COURT'S FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON COM-
PLAINT FOR DECLARATORY
JUDGMENT AND TURNOVER

SPELLMAN, District Judge.

THIS CAUSE comes before the Court upon Appellant, United States of Amer-

ica's, appeal from the Order of the Bankruptcy Court for the Southern District of Florida, 123 B.R. 662. The undersigned finds the United States Supreme Court's holding in *United States v. Whiting Pools,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), to control the outcome of the instant case. This Court believes that the Bankruptcy Court's analysis of the issues presented in the present case accurately articulates the law in this area. Accordingly, upon careful review of the record, it is hereby

ORDERED AND ADJUDGED that the findings of the Bankruptcy Court are AFFIRMED; the United States' appeal is DENIED. Consequently, Appellee, Challenge Air, shall prevail in its declaratory action and the Funds described in the Bankruptcy Court's findings are property of the estate of the Debtor. Furthermore, Challenge Air shall prevail in its turnover action against American Express. American Express is not entitled to attorneys fees or costs in connection with this suit. Finally, the holding of the Bankruptcy Court is made a part hereof, attached herewith as an appendix to this Memorandum Opinion and adopted as the opinion of this Court.

DONE AND ORDERED.

## APPENDIX

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON COMPLAINT FOR DECLARATORY JUDGMENT AND TURNOVER

THIS CAUSE having come before the Court upon the complaint of Plaintiffs, ROBERT L. ROTH, as Chapter 11 Trustee and CHALLENGE AIR INTERNATIONAL, INC, (collectively "Challenge") seeking declaratory judgment against Defendant THE UNITED STATES OF AMERICA, by and through THE INTERNAL REVENUE SERVICE ("IRS"), and turnover against Defendant AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC. ("AMEX"), and the Court having reviewed the pleadings and the file, considered the arguments of counsel, good cause appearing and the Court being otherwise fully advised in the premises, the Court hereby enters the following findings of fact and conclusions of law.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 151, and 157. This is a "core proceeding" which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(E).

This Chapter 11 bankruptcy was initiated by CHALLENGE'S filing of a voluntary petition for relief under Chapter 11 of the Code on November 23, 1987 (generally, the "Case").

This controversy centers on the right to certain funds held by AMEX (the "Funds") pursuant to an airline credit card service agreement (the "Agreement") entered into between CHALLENGE and AMEX on February 1, 1987. Under the terms of the Agreement, AMEX was permitted, under certain circumstances, to retain some or all of the Funds against potential consumer chargebacks. Prior to the Case, AMEX began withholding all of the Funds. This withholding, continuously disputed by CHALLENGE, continues to the present time.

The IRS filed and recorded notices of tax liens against CHALLENGE's property on October 27 and 28, 1987.[1] On October 28, 1987, the IRS levied upon the Funds, (generally, the "Levy"). On November 23, 1987, twenty-six (26) days after the Levy, CHALLENGE filed this Case.

Throughout the Case, CHALLENGE has unsuccessfully sought payment of the Funds from AMEX, both formally and informally. AMEX never offered partial payment or sought to interplead any or all of the Funds. The IRS has never moved throughout the Case to enforce the Levy or to otherwise take possession of the Funds. However, the IRS has contended, without formal pleading, that it was entitled to the Funds because the Levy placed the Funds in the IRS's constructive possession, termi-

---

1. For the purpose of this action, it was not disputed that the liens were properly based upon valid assessments, nor was it contended that the liens were not properly filed and recorded. Therefore the Court does not address or decide any issues relating thereto.

nating CHALLENGE's property interest. CHALLENGE filed the instant action seeking a determination that its rights in the Funds were superior to the IRS notwithstanding their secured claim, if any, and for turnover of the Funds from AMEX, with interest.

The IRS', in its answer, claimed a right to the Funds by virtue of the Levy prior to the bankruptcy, which it contended placed the Funds in the constructive possession of the IRS. AMEX, in its answer, etc., sought to interplead the Funds, a determination as to whom it should transfer the Funds, claimed a right to all interest earned on the Funds, and payment of its attorneys' fees and costs.

On June 30, 1989, a Joint Pre–Trial Stipulation and Joint Pre–Trial Document (the "Stipulation") was entered into and agreed to by all the parties to these proceedings.[2] The sole contested factual issue stated therein was the validity, priority, and extent of the Levy on the Funds.

As noted above, for the purpose of this action CHALLENGE did not dispute the validity or priority of the Levy. Similarly, the Court's ruling herein is limited to the legal issues of whether CHALLENGE is entitled to turnover of the Funds from AMEX, as opposed to the IRS, and whether AMEX is entitled to retain the interest earned on the Funds. The parties agreed and the Court ordered that the adversary would proceed without a trial on the simultaneous submission of briefs.

As the IRS was never in possession of the Funds prior to the Case, the Funds were and are property of the estate. Arguably, the sole legal effect of the Levy, if any, was to elevate the IRS to the status of a secured creditor of CHALLENGE. The IRS rights as a secured creditor under the Bankruptcy Code include seeking adequate protection and/or relief from the automatic stay, not outright possession of the Funds. CHALLENGE'S entitlement to turnover of

the Funds is superior to the interest of the IRS, if any.

The IRS contends it is entitled to the Funds because the Levy gave the IRS constructive possession of the Funds. This, CHALLENGE urged, and the Court agrees, is a flawed argument. Initially, it is clear that the Funds were CHALLENGE'S property prior to the Levy, subject only to AMEX's right to retain and to offset. The only effect of the Levy, if any, was to perfect the IRS's security interest. Thus the Funds are governed by the provisions of the Code.

Section 541 of the Bankruptcy Code provides, in relevant part that property of the estate shall consist of:

(a)(1) Except as provided in subsections (b) and (c)(2) of this section [not relevant here], all legal or equitable interests of the debtor in property as of the commencement of the case.

(c)(1) Except as provided in paragraph (2) of this subsection [not relevant here], an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision—

(B) that is conditioned on the ... financial condition of the debtor ... or gives an option to effect a forfeiture, modification or termination of the debtor's interest in property.

11 U.S.C. § 541.

The Bankruptcy Code empowers the trustee or debtor-in-possession to recover property of the estate held by others. 11 U.S.C. §§ 542, 1107(a). Section 542 provides, in relevant part:

(a) Except as provided in subsection (c) or (d) of this section [not relevant here], an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, ... shall deliver to the trustee, and account for, such property or the value of such property, unless such prop-

---

**2.** AMEX filed a Crossclaim (sic) naming A. Bart Lewis and Peter Brown and alleging that they may assert some interest in the Funds. These parties have not responded and can assert no rights in the Funds at trial or otherwise.

erty is of inconsequential value or benefit to the estate.

(b) Except as provided in subsection (c) or (d) of this section [not relevant here], an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553[3] of this title against a claim against the debtor.

■ Accounts subject to offset are property interests in which a debtor has sufficient interest to render the account property of the estate. *Gold Leaf Corp. v. Hamilton Projects, Inc.*, 78 B.R. 1018, 1021–22 (Bkrtcy.N.D.Fla.1987). This is in accord with the congressional intent that "a broad range of property be included in the estate … [so that] § 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). Indeed, "[t]he scope of this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, including tangible or intangible property…." 462 U.S. at 205 n. 9, 103 S.Ct. at 2313 n. 9 (citations omitted). By the clear language of Section 541(a)(1), the Funds held by AMEX, even conceding AMEX's right to offset, are property of the estate.

The United States Supreme Court has stated clearly and unambiguously that the effect of a pre-petition lien and levy by the IRS is to make the IRS a secured creditor of the debtor. *Whiting Pools*, 462 U.S. at 202, 103 S.Ct. at 2312.

Moreover, the Court in *Whiting Pools*, went further and directed that the IRS, like any other secured creditor, is subject to turnover *even after it has possession pursuant to a prepetition lien and levy*. 462 U.S. at 209, 103 S.Ct. at 2315–16 (emphasis

added). It was the intent of Congress to provide the Chapter 11 debtor with the maximum amount of assets with which to achieve a successful reorganization. 462 U.S. at 203–10, 103 S.Ct. at 2313–15. The IRS, ignoring the Supreme Court precedent, argues that it is in a different position when it files a lien and levy. It contends that this places the Funds within the constructive possession of the IRS. This argument was specifically rejected by *Whiting Pools:*

> the enforcement provisions of the Internal Revenue Code … do not transfer ownership of the property to the United States. [Instead] [t]he Service's interest in seized property is its lien on that property. The Internal Revenue Code's levy and seizure provisions … are special procedural devices available to the IRS to protect and satisfy its liens, and are analogous to the remedies available to private secured creditors. They are provisional remedies that do not determine the Service's rights to the seized property, but merely bring the property into the Service's legal custody.

462 U.S. at 209–11, 103 S.Ct. at 2316. Consequently, the effect of the IRS lien and Levy, if any, was to arguably perfect the IRS's security interest. *See In re Computer Management*, 40 B.R. 201, 203 (Bkrtcy.N.D.Ga.1984). Thus the IRS, without possession of the Funds prior to the Case, must pursue the remedies available to it under the Code as would any other secured creditor. 462 U.S. at 212, 103 S.Ct. at 2317.

The IRS' legal argument rests entirely upon two cases where courts have attempted to draw a distinction from *Whiting Pools* when the property involved is cash or accounts, rather than real property or chattels. *See, e.g., Altman v. C.I.R.*, 83 B.R. 35 (D.Hawaii 1988); *In re Professional Technical Services, Inc.*, 71 B.R. 946 (Bkrtcy.E. D.Mo.1987). *Technical Services* draws a distinction between corporeal personal property and funds or moneys worth. This

---

**3.** At the time of the commencement of this case, AMEX withheld the funds due CHALLENGE on the basis of the Agreement provision permitting AMEX to withhold funds against future cancel-

lations or claims of ticket holders. It is agreed that all such claims have now been satisfied, so that no right by AMEX to offset now exists.

distinction was based, in part, on the difficulty of fashioning adequate protection for a lien on cash.

*Technical Services*, a decision from a bankruptcy court in another Circuit, is not binding on this Court. That notwithstanding, *Technical Services* rests upon extremely questionable precedent, to wit: *Cross Electric Company, Inc. v. United States*, 664 F.2d 1218 (4th Cir.1981) and *DiFlorio v. United States*, 30 B.R. 815 (N.D.N.Y.1983). *Cross Electric* was a case with facts similar to *Whiting Pools*. The Supreme Court granted *certiorari* to resolve the conflict between *Cross Electric* and *Whiting Pools*. 462 U.S. at 202, 103 S.Ct. at 2312. The Court affirmed *Whiting Pools* and rejected the *Cross Electric* reasoning. Simply put, *Technical Services* is not supported by case law; was based on flawed reasoning, and can be discarded as an aberration. Similarly, *DiFlorio* rested primarily upon *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). The Court in *Whiting Pools* made specific reference to *Phelps*, concluding, inter alia, that *Phelps* was inapplicable in Chapter 11 proceedings, 462 U.S. at 206 n. 13, 103 S.Ct. at 2314 n. 13.

Most other courts confronting IRS lien and levy proceedings under the Code have held IRS liens and levies ineffective as against the Debtor's rights to turnover and possession. *See United States v. Whiting Pools, Inc.*, 674 F.2d 144, 156–59 (2d Cir. 1982), *aff'd*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re AIC Industries, Inc.*, 83 B.R. 774 (Bkrtcy.D.Colo.1988); *In re Cleveland Graphic Reproduction, Inc.*, 78 B.R. 819, 821–22 (Bkrtcy.N.D.Ohio 1987); *In re Suppliers, Inc.*, 41 B.R. 520, 521–22 (Bkrtcy.E.D.Ky.1984); *In re Davis*, 35 B.R. 795, 797 (Bkrtcy.W.D.Wash.1983); *In re Dunne Trucking Co.*, 32 B.R. 182, 188–93 (Bkrtcy.N.D.Iowa 1983); *In re Debmar*, 21 B.R. 858 (Bkrtcy.S.D.Fla.1982); *In re Bristol Convalescent Home, Inc.*, 12 B.R. 448, 450–51 (Bkrtcy.D.Conn.1981); *In re Alpa Corporation*, 11 B.R. 281 (Bkrtcy. Utah 1981).

*Technical Services* also flies in the face of congressional intent as to Chapter 11 reorganizations along with the letter and spirit of the Bankruptcy Code. As stated by the Court in *Whiting Pools:*

> By permitting reorganization, Congress anticipated that the business would continue to provide jobs, to satisfy creditors claims, and to produce a return for its owners.... The reorganization effort would have small chance of success, however, if property essential to running the business were excluded from the estate.... This authorization extends even to property of the estate in which a creditor has a secured interest.

462 U.S. at 203, 103 S.Ct. at 2312–13 (citations omitted). Simply, if *Technical Services* were extended to its logical conclusion, any creditor with a perfected lien on cash collateral (or for that matter, any collateral under this line of reasoning) would simply collect their collateral notwithstanding the filing of a bankruptcy. Obviously, this would sound the death knell for reorganization as it is currently envisioned by the Code.

In light of the foregoing, the IRS, who in this instance is accorded no better treatment than any other secured creditor, can have no objection to turnover of the Funds to CHALLENGE and must seek its remedies, if any, under the Code.

This Court notes that the IRS purposefully and myopically elected in the Case and in this adversary proceeding to pursue outright possession of the Funds to the exclusion of other remedies of a secured creditor including the right under § 363(e) to adequate protection in conjunction with the turnover of the Funds. To the extent that the IRS believes that it operates under special exemptions with regard to the Code, this idea was firmly rejected by *Whiting Pools:*

> "Nothing in the Bankruptcy Code or its legislative history indicates that Congress intended a special exception for the tax collector in the form of an exclusion

from the estate of property seized to satisfy a tax lien."

462 U.S. at 209, 103 S.Ct. at 2316.

The IRS has methodically and firmly decided to forego its alternative options, and instead has pursued its claim for outright possession of the Funds, seeking to extend the tenuous precedent enunciated in *Technical Services*. CHALLENGE has urged that, similar to a compulsory counterclaim under Fed.R.Civ.P. 13(a), and tantamount to a waiver, that the IRS has "rolled the dice," and cannot fall back upon an adequate protection claim under Section 363(e), or other matters not pleaded, otherwise raised, or briefed. While the Court does not agree that the IRS has specifically waived any rights in the Funds, it will certainly consider the time and money expended by the CHALLENGE in what should have been a simple turnover action upon an application for surcharge.

The IRS did not acquire possession of nor title to the Funds by virtue of its Levy, only an alleged security interest. As a secured creditor, the IRS is limited to the remedies available to it in the Code.

Having determined that CHALLENGE is entitled to the FUNDS, the Court must address AMEX's claimed entitlement to the interest earned on the Funds and its fees and costs.

■ CHALLENGE is entitled to the interest earned upon the Funds while in the possession of AMEX because the principal from which the interest was derived is and has always been the property of CHALLENGE. AMEX should not be permitted to benefit at the expense of CHALLENGE and its creditors by retaining interest on the Funds which are the property of the estate.

The only language in the Agreement which entitled AMEX to withhold the Funds states, inter alia at Section 12(c), that:

"... Amex will immediately be deemed to have the right ... and to withhold and apply such sums as are *reasonably* necessary to protect or satisfy Amex's rights ..." (emphasis added)

AMEX contends, as a contractual affirmative defense, that CHALLENGE is not entitled to the interest earned on the Funds. However, the relevant portion of the Agreement does not entitle AMEX to that interest either. Rather, it is silent. The reasonable and equitable interpretation therefor is that the interest on the Funds belongs to the ultimate owner of the Funds. It is clear that the Funds were CHALLENGE's property, subject only to AMEX's offset for chargebacks. *See Gold Leaf Corp. v. Hamilton Projects, Inc.*, 78 B.R. 1018 (Bkrtcy.N.D.Fla.1987). Further, AMEX has not shown, contractually or otherwise, how it is entitled to benefit for having detained CHALLENGE's property, even if the withholding were proper and in good faith until the present. Aside from there being no contract provision conferring such right, there is no apparent statute or other authority that would confer such a right on AMEX. AMEX appears to believe that it deserves to be rewarded for holding onto CHALLENGE's property for as long as it possibly could.

As AMEX has exhausted its setoff rights, and cannot point to any other basis for its attempt to obtain the earned value of CHALLENGE's property,[4] AMEX simply has no basis for claiming it is entitled to the interest on the Funds. AMEX's claim is without merit, and interest on the Funds is awarded to CHALLENGE.[5]

■ AMEX is also not entitled to attorneys' fees and costs. Ordinarily in interpleader, the disinterested stakeholder may receive costs and fees from out of the interpleading Funds. *See Prudential Ins. Co. of America v. Boyd*, 781 F.2d 1494,

---

4. Funds which are, of course, the property of the estate, and necessary to CHALLENGE's reorganization.

5. CHALLENGE does not demand the specific amount of interest which is due under various available theories of calculation. Instead, the parties have agreed that the amount of interest payable is Thirty Nine Thousand One Hundred and Sixteen Dollars ($39,116.00)

1497 (11th Cir.1986); *Perkins State Bank v. Connolly*, 632 F.2d 1306, 1311 (5th Cir. 1980). However:

> An award of attorney's fees to a bystander is an altogether different matter from an award of fees to a claimant who is a part of the controversy ... it is clear that not even all interpleader plaintiffs are protected by federal law pertaining to attorney's fees. Although attorney's fees are generally awarded by federal courts to the plaintiff who initiates the interpleader as a mere stakeholder, the plaintiff who enters the conflict (by contesting the ownership of the fund or disputing the correct amount of his liability) will not, in the absence of special circumstances, be awarded any expenses.

*Perkins*, 632 F.2d at 1311.

AMEX did not initiate this action, instead it has stood on the sidelines for over two years, and only now seeks to interplead as the dispute is about to be resolved anyway. As argued by CHALLENGE, the "Counterclaim for Interpleader" is too little to late. AMEX did not create or bring the Funds into Court and provided no assistance in resolving this dispute. *See Chemical Bank v. Richmul Associates*, 666 F.Supp. 616, 619 (S.D.N.Y.1987); *Aetna Life Ins. Co. v. Outlaw*, 411 F.Supp. 824, 826 (D.Md. 1976).

Further, AMEX is not disinterested. AMEX is very interested to the extent of seeking the interest, after having retained the Funds for its own benefit and insulation. By its defensive interpleader, AMEX can not magically create the right to impress the interpleaded funds with its costs in this action. *Id.* at 620; *Paul Revere Life Ins. Co. v. Riddle*, 222 F.Supp. 867, 868 (E.D.Tenn.1963). AMEX's claim for fees and costs is also without merit and is denied. American Express is not liable for tax, interest or penalties under § 6332(d) of IRS of 1986.

In accordance with Bankruptcy Rule 9021, a separate Final Judgment shall be entered simultaneously in conformity herewith.

### FINAL JUDGMENT ON COMPLAINT FOR DECLARATORY JUDGMENT AND TURNOVER

THIS CAUSE having come before the Court upon the complaint of Plaintiffs, ROBERT L. ROTH, as Chapter 11 Trustee and CHALLENGE AIR INTERNATIONAL, INC, seeking declaratory judgment and turnover and the Court having reviewed the pleadings and memorandums and having entered simultaneously herewith its Findings of Fact and Conclusions of Law, good cause appearing and in conformity therewith, the Court being otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDGED that Plaintiffs shall prevail on their declaratory action and the Funds (as more fully described in the Findings) are property of the estate of the Debtor and shall be turned over to the Trustee forthwith to be held in an interest bearing account. The Court does not find nor determine the validity, priority, or extent of the Defendant IRS' interest in the Funds, if any. Funds will be released when this determination is made. It is further

ORDERED AND ADJUDGED that Plaintiffs shall prevail on their action for turnover against Defendant American Express. Pursuant to the stipulation of counsel as to amounts, American Express shall pay to the Trustee the Funds in the amount of One Hundred Sixty Two Thousand Nine Hundred and Eighty Five Dollars and 03/00 ($162,985.03), and the amount of Thirty Nine Thousand One Hundred and Sixteen Dollars ($39,116.00) in interest on the Funds, for a total amount to be turned over of Two Hundred Two Thousand One Hundred One Dollars and 03/00 ($202,101.03), for which sum let execution issue forthwith.

Defendant is not entitled to attorneys fees or costs in connection with this suit.

DONE AND ORDERED in Chambers, at Miami, Southern District of Florida, this 11 day of July, 1990.

/s/ A. Jay Cristol
A. JAY CRISTOL
U.S. Bankruptcy Judge