**In re OUTDOOR DISPLAYS WELDING & FABRICATION, INC., a Georgia corporation, Debtor.**

**OUTDOOR DISPLAYS WELDING & FABRICATION, INC., Plaintiff,**

v.

**U.S. ENTERPRISES, INC., d/b/a Corey Outdoor, Defendant.**

Bankruptcy No. 187–00436.
Adv. P. No. 187–0055.

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

March 31, 1988.

John B. Long, Nixon, Yow, Waller & Capers, Augusta, Ga., for plaintiff.

Raymond G. Chadwick, Knox & Zacks, P.C., Augusta, Ga., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

JOHN S. DALIS, Bankruptcy Judge.

This adversary proceeding for turnover of property having been heard and based upon the evidence presented at trial, the court makes the following findings of fact and conclusions of law.

In a series of transactions, Outdoor Displays Welding & Fabrication, Inc., debtor in the above referenced Chapter 11 proceeding (hereinafter "Outdoor Displays") contracted with U.S. Enterprises, Inc. d/b/a Corey Outdoor (hereinafter "Corey") to construct outdoor advertising signs at various locations within the State of Georgia. In the case of each project, Outdoor Displays prepared and submitted for Corey's consideration a proposal outlining the price at which Outdoor Displays was willing to provide specified materials and services. Upon acceptance of the proposal by Corey by the signature of an authorized representative, the proposal became the agreement between the parties. Each proposal contained the following typed written terms: "NOTE: * Price does not include local taxes, licenses, permits, or fees." In each proposal Outdoor Displays agreed "to furnish labor and materials complete in accordance with the above specifications" for a specified sum which varied from project to project. Each proposal also contained the following terms: "Any alteration or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate." From the evidence presented there is no dispute as to the terms of the contracts, the amount of the contracts, or the services rendered by Outdoor Displays and accepted by Corey.

The State of Georgia has levied a sales tax charge on each of the transactions and this liability remains unpaid. The testimony presented on behalf of Outdoor Displays stated that in general within the outdoor advertising sign construction industry and in particular in Outdoor Displays' dealings with Corey sales taxes were not a point of negotiation between the parties. Testimony on behalf of Corey stated that Corey's experience had been that sales taxes were included within the total sales price, specifying that in Corey's dealings with other firms it was customary within the industry for sales taxes to be included in a lump sum price. Testimony on behalf of Corey also stated that many of the projects in question were awarded to Outdoor Displays on the basis of competitive bidding and an additional charge for sales taxes would have affected the award to Corey. Beyond this statement, Corey failed to produce any additional evidence to show any particular instance that an additional charge of sales taxes would have affected

the award of any contract between the parties.

The issues presented in this proceeding are:

1. Does the written contract reflect an intent between the parties as to whether sales tax was included in the lump sum price under the contract; and

2. If the written contract does not address the issue of sales tax liability, which party must bear the burden of paying the sales tax obligation.

As a revenue-raising device, the State of Georgia levies a sales tax on certain transactions. The parties do not dispute that the transactions in question were ones upon which the State of Georgia could legitimately levy a sales tax in accordance with the provisions of Official Code of Georgia Annotated § 48-8-1 *et seq.*[1] No sales taxes have been paid to the State of Georgia on these transactions.

The burden of paying sales tax in Georgia is placed upon the purchaser, and the seller in turn is obligated to collect the tax as agent for the state. O.C.G.A. § 48-8-30(b)(1).[2] Where necessary, the seller may seek collection of tax due from the purchaser at law in the same manner as any other debt. O.C.G.A. § 48-8-35. Corey argued that the tax was in fact a part of the lump sum contract price paid to Outdoor Displays, and Outdoor Displays failed to remit same to the state. Outdoor Displays has taken the position that no tax was charged on the transaction, thereby conceding that it failed to fulfill its statutory duty as collection agent of the state. Outdoor Displays points to the contract language which states "local taxes" are not included in the quoted price and asserts that sales taxes are local taxes.

Resolution of the issue before the court requires an interpretation and analysis of the contract terms. Georgia substantive law of contract interpretation and construction governs. O.C.G.A. § 13-2-1 *et. seq.; Boston Ins. Co. v. Gable,* 352 F.2d 368 (5th Cir., 1965).

Where a contract is in clear, plain, unambiguous language capable of only one reasonable meaning, no construction is required or permissible. *R.S. Helms, Inc. v. GST Dev. Co.,* 135 Ga.App. 845, 219 S.E.2d 458 (1975). Where however, the contract is unclear as to meaning, the construction is a question of law and accordingly a function of the court. O.C.G.A. § 13-2-1. The guiding principles for the court in these instances are set out in O.C.G.A. § 13-2-3, which provides in part:

> The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction.

The Georgia Code further sets out a list of non-exclusive rules to aid the court in ascertaining the intent of the parties. O.C.G.A. § 13-2-2.[3]

---

1. Henceforth Official Code of Georgia Annotated referenced O.C.G.A.

2. O.C.G.A. § 48-8-30(b)(1) provides: every purchaser of tangible property at retail in this state shall be liable for a tax on the purchase at the rate of 3% of the sales price of the purchase. The tax shall be paid by the purchaser to the retailer making the sale, as provided in this article.

3. O.C.G.A. § 13-2-2 provides:
   The following rules, among others, shall be used in arriving at the true interpretation of contracts:
   (1) Parol evidence is inadmissible to add to, take from, or vary a written contract. All the attendant and surrounding circumstances may be proved and, if there is an ambiguity, latent or patent, it may be explained; so, if only a part of a contract is reduced to writing (such as a note given in pursuance of a contract) and it is manifest that the writing was not intended to speak the whole contract, then parol evidence is admissible;
   (2) Words generally bear their usual and common signification; but technical words, words of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this peculiar meaning. The local usage or understanding of a word may be proved in order to arrive at the meaning intended by the parties;
   (3) The custom of any business or trade shall be binding only when it is of such universal practice as to justify the conclusion that it became, by implication, a part of the contract, except in regard to those transactions covered by Title 11;

With reference to the State of Georgia's rules of contract construction, a determination must be made as to the intent of the parties regarding the payment of sales tax. The first question is whether the contract provision excluding "local taxes" from the contract amount disposes of this matter.

■ The parties have attempted to show that the business customs of the outdoor advertising sign industry determined the meaning of the phrase "local taxes". Outdoor Displays claims "local taxes" means all governmental levies, including sales taxes. Corey claims "local taxes" means ad valorem property taxes levied by counties or municipalities.

There is no legal impediment to prevent parties from contracting to include a single negotiated lump sum price. *B.L. Montague Co., Inc. v. Somers*, 94 Ga.App. 860, 96 S.E.2d 629 (1957). Corey maintains that the practice in the industry was to include sales taxes in the lump sum price. The practice is, however, to exclude ad valorem taxes. In Corey's view this custom is reflected in the contracts and the exclusion of local taxes is meant accordingly to exclude only ad valorem taxes. The testimony as to the custom and practice in the industry was in conflict. Outdoor Displays presented evidence to support its contention that sales taxes were not included in the price and that the phrase excluding local taxes reflected this industry-wide practice. O.C.G.A. § 11–2–202–Sales provides in pertinent part:

Terms with respect to which the confirmatory memorandum of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented (a) By ... usuage of trade (Code Section 11–1–205) ...

O.C.G.A. § 11–1–205(2) provides in pertinent part:

A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such usage are to be proved as facts....

From the evidence presented neither party has carried the burden required under O.C.G.A. § 11–2–202 and § 11–1–205 in establishing the applicable usage of trade.

The parties' intention regarding the phrase "local taxes" must be determined from the face of the contract. Where words and phrases must be defined for contract construction purposes, they "generally bear their usual and common signification...." O.C.G.A. § 13–2–2(2). The word "local" can have several meanings depending upon the context in which it is used. "Local taxes" is at best an ambiguous phrase, admitting of no single, reasonable meaning, without resort to construction. From the face of the contract there is no way to determine whether the parties intended to use the word "local" as synonymous with all "non-federal" or with merely "municipal" taxes.

Before the filing of the bankruptcy proceeding, Outdoor Displays had a nationwide business. From the perspective of a corporation doing business throughout the United States, "local taxes" could well include state sales taxes. The scope of Out-

---

(4) The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part;

(5) If the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred;

(6) The rules of grammatical construction usually govern, but to effectuate the intention they may be disregarded; sentences and words may be transposed, and conjunctions substitut-

ed for each other. In extreme cases of ambiguity, where the instrument as it stands is without meaning words may be supplied;

(7) When a contract is partly printed and partly written, the latter part is entitled to most consideration;

(8) Estates and grants by implication are not favored;

(9) Time is not generally of the essence of a contract; but, by express stipulation or reasonable construction, it may become so.

door Display's business can be used to explain the meaning of local taxes. O.C.G.A. § 13–2–2(1) permits proof of the "attendant and surrounding circumstances." Here, however, the fact that Outdoor Displays was a national enterprise is not instructive in deciphering the meaning of "local taxes." The transactions between Outdoor Displays and Corey were between corporations operating in the State of Georgia for sales to be made in Georgia. The provisions in the contracts excluding "local taxes" were typewritten rather than printed. Beyond mere speculation, it is impossible to conclude that either of the parties viewed the sales as transactions between two nationwide concerns, rather than between two Georgia firms.

The phrase "local taxes" as used in the contracts remains ambiguous. There is a strong rule of contract construction which requires that ambiguities in language be resolved against the interest of the contract's drafter. O.C.G.A. § 13–2–2(5); *Kennedy v. Brand Banking Co.*, 245 Ga. 496, 266 S.E.2d 154 (1980). As other pertinent aids in contract construction have failed to shed light on the meaning of "local taxes", the court must conclude that the phrase "local taxes" as used in these contracts does not include state sales taxes.

■ This does not end the inquiry. That the contract does not exclude state sales taxes through the exclusion of "local taxes" does not mean that sales tax was included in the price. Nowhere in the contract was the incidence of sales tax liability specifically addressed. Corey takes the position that the language of the proposal prohibits any alteration or deviation from the proposal terms except by written agreement signed by the parties. This provision taken with the language whereby Outdoor Displays agreed "to furnish labor and materials complete in accordance with the ... specifications", limits Corey's liability to the specific sums as set forth in the various proposals thereby including sales tax liability.

For this proposition Corey relies upon the case of *B.L. Montague Co., Inc. v. Somers* supra. The controversy in that case centered around an instrument which the plaintiff claimed was an acceptance of his earlier offer but which the defendant claimed was a counteroffer which the plaintiff subsequently accepted. The court in that decision agreed that the instrument was a counteroffer and that the plaintiff had accepted. Relevant to this discussion is the court's analysis of the problem of the contract's treatment of the sales tax liability issue. The plaintiff's original offer described the contract price as the sum of One Hundred Ten Thousand and No/100 ($110,000.00) Dollars and it specifically mentioned that state, federal and local taxes would be excluded. The counteroffer described the price as follows: "for the lump sum of One Hundred Ten Thousand and No/100 ($110,000.00) Dollars". No mention of taxes was made in the counteroffer. The court held that the only reasonable construction which could be placed upon the counteroffer was that the sales taxes would be included in the contract price of One Hundred Ten Thousand and No/100 ($110,000.00) Dollars. The court stressed that the original offer expressly excluded sales taxes and the counteroffer was silent on this matter.

In the present matter, Corey argues that the contract provisions which obligate Outdoor Displays "to furnish labor and materials complete" and terms which prevented any "alteration or deviation involving extra costs" have the same effect as the "lump sum" price referenced in the *B.L. Montague* decision. This rationale ignores the facts of that case. First, the plaintiff's original offer explicitly dealt with sales tax liability, and the counteroffer omitted it. The contrasting proposals, offer and subsequent counteroffer, afforded that court the opportunity to analyze the agreement in light of the surrounding circumstances formulating the intent of the parties. *Consolidated Freightways Corp. of Delaware v. Williams*, 139 Ga.App. 302, 228 S.E.2d 230 (1976). Second, the lump sum contract price could reasonably be construed to mean all costs to the purchaser. In the present action the contract price specified labor and materials. A reasonable inference could be drawn that something in

addition to labor and materials may be necessary to complete the transaction which was not included in the price. There is no ambiguity in the promise of Outdoor Displays to provide labor and materials for a specified sum to perform a specific project for Corey.

Corey has urged that since it is a crime for the seller to fail to collect sales tax for the benefit of the State of Georgia, *see*, O.C.G.A. § 48–8–7, the court cannot construe the contracts to authorize Outdoor Displays to take advantage of its wrong. *National Enterprises, Inc. v. Davis*, 140 Ga.App. 488, 231 S.E.2d 490 (1976). In addition to the sales tax, the State of Georgia has levied penalties and interest against Outdoor Displays for failure to remit the sales tax in question. Outdoor Displays has stipulated that this is a burden to be borne by Outdoor Displays as state law prohibits the collection of these penalties and interest from the purchaser in circumstances where the sales tax was not collected at the time of sale. If the tax is an obligation due from the purchaser, and if in this case the tax was not paid by the purchaser and collected by the seller, the seller is merely enforcing the obligation to pay the tax and the seller is bearing the burden of all penalties and interest. It can hardly be construed that the seller in this instance would be profiting from his own wrongdoing. There is no ambiguity in the contracts. The contracts do not address sales tax payment.

■ Having concluded that the proposals do not allocate the burden of sales tax liability, this burden must be allocated in accordance with state law. Under Georgia law the burden for the payment of sales tax is on the purchaser. O.C.G.A. § 48–8–30(b)(1) see footnote 2. At this point comment must be made on Corey's reliance upon *Chatham v. Southern Railway Co.*, 157 Ga.App. 831, 278 S.E.2d 717 (1981). In *Chatham* the purchaser of truck bodies awarded a contract to the seller on the basis of competitive bidding and signed a purchase order setting a specified price as "the maximum price at which invoice will be paid unless an increase is specifically authorized by us prior to shipping." The purchaser received the merchandise and paid the invoice. Some time subsequent, an Internal Revenue Service audit revealed that the manufacturer had failed to pay applicable federal excise taxes. The manufacturer billed the purchaser, and purchaser refused to pay, relying upon the contract language. The Georgia Court of Appeals, in affirming a summary judgment for the purchaser, reasoned that the federal excise tax is imposed by federal law on the sale by a manufacturer or producer, and under IRS regulations the tax is payable by the manufacturer, producer or importer making the sale, citing 26 C.F.R. 48.406(b)–1(c); 26 U.S.C. § 4061. Consequently, the purchaser had no obligation to pay the tax in question unless it assumed the responsibility by contract. The rationale used by the Georgia Court of Appeals in reaching their decision has no application in this case in light of O.C.G.A. § 48–8–30(b)(1). As the contracts are unambiguous in their terms in not addressing the sales tax liability issue, and in accordance with state law, it is the obligation of the purchaser to pay the tax.

■ The final issue remaining for resolution is the amount due by Corey to Outdoor Displays for payment of sales tax on each project. Testimony on behalf of Outdoor Displays from an employee of the Georgia State Department of Revenue regarding the sales tax assessment established the total sales tax liability for all transactions in question at Fifty Five Thousand Eight Hundred Ninety Three and 18/100 ($55,893.18) Dollars. Under cross-examination the witness admitted that some of the proposals and invoices failed to reflect a sufficient address to pinpoint the location of the property where the signs were delivered and erected for the assessment of applicable 1% local option sales taxes or any special sales tax assessment. He testified that to the best of his ability he estimated the sales tax on each of these transactions. A review of the evidence indicated that his estimate in each instance was five percent (5%), which assessment was the then maximum amount of sales tax chargeable in any locale in the State of Georgia. Faced with

the possibility of error, the auditor chose to err in favor of his employer, the State of Georgia. There is no dispute that all of the transactions between the parties occurred within the State of Georgia. Therefore, the maximum sales tax assessment due from Corey on those contracts and invoices with indefinite locals is the basic sales tax rate for the State of Georgia, three percent (3%). Outdoor Displays has failed to carry the burden of proof as to assessments in excess of three (3%) percent in those instances where the contract fails to present a specific address for delivery. The following assessments are adjusted as indicated.

| JOB NO. | PROPERTY LOCATION LISTED | INVOICE AMT. | 5% TAX LEVY | 3% TAX LEVY |
|---|---|---|---|---|
| 2787 | No Address | 13,596.00 | 679.80 | 407.88 |
| 2924 | No Address Atlanta, Georgia | 10,329.00 | 516.45 | 309.87 |
| 2870 | No Address Atlanta, Georgia | 11,656.00 | 582.80 | 349.68 |
| 2966 | No Address Atlanta, Georgia | 14,789.00 | 739.45 | 443.67 |
| 3214 | No Address Atlanta, Georgia | 1,465.00 | 73.25 | 43.95 |
| 3424 | No Address Newnan, Georgia | 9,393.00 | 469.65 | 281.79 |
| 3428 | No Address | 11,966.00 | 598.30 | 358.98 |
| 3553 | No Address | 17,288.00 | 864.40 | 518.64 |
| 3634 | No Address | 7,463.00 | 373.15 | 223.89 |
| 3430 | No Address FOB, Augusta, Ga. | 6,470.00 | 323.50 | 194.10 |
| 3966 | 14th & Williams FOB Augusta, Ga. | 1,500.00 | 75.00 | 45.00 |
| 4042 | No Address Atlanta, Georgia | 25,000.00 | 1,250.00 | 750.00 |
| 4287 | No Address Atlanta, Georgia | 20,947.00 | 1,047.35 | 628.41 |
| 4279 | No Address Atlanta, Georgia | 7,752.00 | 387.60 | 232.56 |
| 3944 | No Address | 14,794.00 | 739.70 | 443.82 |
| 4542 | No Address Atlanta, Georgia | 6,261.00 | 313.05 | 187.83 |
| 4553 | No Address Atlanta, Georgia | 15,089.00 | 754.45 | 452.67 |
| 4682 | No Address | 4,520.00 | 226.00 | 135.60 |
| 4805 | No Address Atlanta, Georgia | 17,394.00 | 869.70 | 521.82 |
| 3111 | No Address | 3,111.00 | 155.55 | 93.33 |
| 5250 | No Address | 2,016.00 | 100.80 | 60.48 |
| 5104 | 748 Marietta St. No city | 3,122.00 | 156.10 | 93.66 |
| 5589 | No Address | 3,520.00 | 176.00 | 105.60 |
| 5588 | No Address | 11,140.00 | 557.00 | 334.20 |
| 5582 | No Address Atlanta, Georgia | 1,670.00 | 83.50 | 50.10 |
| 5674 | No Address Atlanta, Georgia | 14,668.00 | 733.40 | 440.04 |
| 5783 | No Address FOB Augusta, Ga. | 7,220.00 | 361.00 | 216.60 |
| 6212 | No Address Atlanta, Georgia | 3,368.00 | 168.40 | 101.04 |
| 6325 | No Address Atlanta, Georgia | 10,354.00 | 517.70 | 310.62 |
| 6332 | No Address | | | |

| JOB NO. | PROPERTY LOCATION LISTED | INVOICE AMT. | 5% TAX LEVY | 3% TAX LEVY |
|---|---|---|---|---|
| | Atlanta, Georgia | 15,856.00 | 792.80 | 475.68 |
| 6331 | No Address | | | |
| | Atlanta, Georgia | 12,778.00 | 638.90 | 383.34 |
| 6402 | No Address | | | |
| | Atlanta, Georgia | 14,592.00 | 729.60 | 437.76 |
| 6538 | No Address | | | |
| | FOB Augusta, Ga. | 1,105.00 | 55.25 | 33.15 |
| | TOTAL | | 16,109.60 | 9,665.76 |

Based upon the foregoing calculation, the difference between the amount assessed in the sales tax audit and the base amount for sales tax in the State of Georgia is Six Thousand Four Hundred Forty Three and 84/100 ($6,443.84) Dollars. Reducing the amount prayed for in Plaintiff's complaint, Fifty Five Thousand Eight Hundred Ninety Three and 18/100 ($55,893.18) Dollars, by Six Thousand Four Hundred Forty Three and 84/100 ($6,443.84) Dollars, based upon the evidence presented the amount of sales tax liability of Corey is Forty Nine Thousand Four Hundred Forty Nine and 34/100 ($49,449.34) Dollars.

It is therefore ORDERED that Outdoor Displays recover from Corey the sum of Forty Nine Thousand Four Hundred Forty Nine and 34/100 ($49,449.34) Dollars and future interest at the rate specified by law.

It is further ORDERED as the sales tax liability determined herein is due from the purchaser for payment to the State of Georgia, Outdoor Displays shall segregate all sums paid under this order and judgment in a separate account and shall pay said sums to the State of Georgia upon application by Outdoor Displays and further order of this court.