[Cite as *RG Steel Warren, L.L.C. v. Biviano*, 2015-Ohio-5463.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| RG STEEL WARREN, LLC, | : | **PER CURIAM OPINION** |
| Relator, | : | |
| - vs - | : | **CASE NO. 2014-T-0064** |
| ADRIAN S. BIVIANO, IN HIS CAPACITY AS AUDITOR, TRUMBULL COUNTY, OHIO, et al., | : | |
| | : | |
| Respondents. | : | |

Original Action for Writ of Mandamus.

Judgment: Writ denied.

*John P. Slagter* and *Gregory P. Amend,* Buckingham, Doolittle & Burroughs, LLC, 1700 One Cleveland Center, 1375 East Ninth Street, Cleveland, OH 44114-1724 (For Relator).

*Lynn B. Griffith, III,* Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481; and *Michael A. Gallo, Jr.,* Nadler, Nadler & Burdman Co., L.P.A., 6550 Seville Dr., Suite B, Canfield, OH 44406 (For Respondents).

*M. Colette Gibbons,* Ice Miller, LLP, 600 Superior Avenue East, Suite 1701, Cleveland, OH 44113 (For Warren City School District).

PER CURIAM.

{¶1} This matter is before us on Relator, RG Steel Warren, LLC's, petition for a writ of mandamus, seeking a writ to require the Trumbull County Auditor to draw a warrant on the County Treasurer for a tax refund in relator's favor. Warren City School

District ("the District") intervened and filed a motion for summary judgment, arguing that, as a matter of law, relator is not entitled to the tax refund. We hold that, because relator's claimed predecessor, WCI Steel, Inc., waived and released its claim to the tax refund in its Chapter 11 bankruptcy case, relator is likewise barred from seeking recovery on that claim. For the reasons that follow, the District's motion is granted and the writ is denied.

{¶2} The history of this case involves litigation in two separate proceedings: (1) personal property tax litigation commenced by WCI Steel, Inc. ("WCI"), which owned and operated a steel mill in Warren, Ohio, seeking a tax refund before the Ohio Department of Taxation, and (2) WCI's bankruptcy case.

{¶3} For tax years 2001, 2002, and 2003, WCI paid personal property taxes on its steel-manufacturing equipment based on its value using the valuation method approved by the Ohio Tax Commissioner. In August 2003, WCI asserted a claim for a reduced valuation of its equipment (and reduced personal property taxes) before the Tax Commissioner for these three tax years. WCI claimed it had been overcharged, and asked for a retroactive reduction in value, i.e., a tax refund, based on an alternative method of valuation advocated by its expert.

{¶4} While WCI's claim was pending with the Tax Commissioner, on September 16, 2003, WCI filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Ohio (Youngstown).

{¶5} In September 2005, the Tax Commissioner denied WCI's request to retroactively reduce its personal property taxes for tax years 2001, 2002, and 2003. In November 2005, WCI appealed the assessment to the Board of Tax Appeals ("BTA"),

2

alleging the Tax Commissioner erred in not calculating the value of its equipment according to the method of valuation of WCI's expert.

**{¶6}** On May 1, 2006, the Bankruptcy Court confirmed WCI's consensual plan of reorganization. Under its plan, WCI transferred its assets to a new entity called Reorganized WCI, free and clear of all liens and claims.

**{¶7}** Four years later, on May 18, 2010, the BTA dismissed WCI's pending tax appeal on jurisdictional grounds. WCI appealed the dismissal to the Ohio Supreme Court.

**{¶8}** On July 7, 2011, the Supreme Court in *WCI Steel, Inc. v. Testa*, 129 Ohio St.3d 256, 2011-Ohio-3280, reversed the BTA's dismissal of WCI's appeal, and held that the BTA could consider the alternative valuation of WCI's equipment prepared by its expert. *Id.* at ¶52.

**{¶9}** On December 28, 2012, the BTA reversed the Tax Commissioner's decision; found WCI's appraisal to be probative; and ordered the Tax Commissioner to apply the valuations for WCI's 2001, 2002, and 2003 personal property tax returns in a manner consistent with WCI's appraisal. Contrary to relator's statement of the facts, the BTA's decision was in favor of WCI, *not WCI and relator*. On December 18, 2013, the Tax Commissioner issued the corrected assessment tax certificates for these tax years.

**{¶10}** Meanwhile, two years after WCI's bankruptcy case was closed, on May 16, 2008, Reorganized WCI entered a merger agreement with OAO Severstal, a Russian joint stock company, pursuant to which Reorganized WCI merged with Severstal.

3

{¶11} The parties disagree concerning whether relator subsequently acquired WCI's tax refund claim. Relator argues that, following a series of corporate and name changes between 2008 and 2011, Reorganized WCI became RG Steel Warren, LLC (i.e., relator), and, thus, relator acquired WCI's tax refund claim. In contrast, the District argues that in 2011, three years after the merger between Severstal and Reorganized WCI, a separate company, RG Steel, LLC (relator's parent), bought Reorganized WCI from Severstal. The District argues that, according to the agreement by which RG Steel bought Reorganized WCI, called the "Stock Purchase Agreement," Severstal retained any tax refund claim. Thus, the District argues that relator never acquired the claim. However, the parties' dispute as to whether relator acquired the tax refund claim is immaterial for purposes of summary judgment because, as discussed below, the tax refund claim was extinguished upon confirmation of WCI's bankruptcy case in 2006, five years *before* relator allegedly acquired it.

{¶12} On May 31, 2012, RG Steel and relator (RG Steel Warren, LLC) filed Chapter 11 bankruptcy petitions in the Bankruptcy Court in Delaware. Those bankruptcy cases remain pending. Significantly, neither RG Steel nor relator scheduled WCI's tax refund claim as an asset in either of their bankruptcy schedules or statement of financial affairs. Thus, even after the Ohio Supreme Court issued its decision in *Testa, supra*, relator did not assert ownership of WCI's tax refund claim in relator's bankruptcy case. In fact, relator never asserted ownership of WCI's tax refund claim until it filed the instant petition.

{¶13} On April 7, 2014, relator sent a letter to the Trumbull County Auditor asking it to draw a warrant on the County Treasurer in relator's favor to refund the

4

overpayment made by WCI, as determined from the corrected assessments. Relator had never entered an appearance in WCI's tax litigation, and, in relator's request to the Auditor, did not produce any documents showing it was entitled to the refund owed to the taxpayer (WCI). Thus, the Auditor, through its counsel, the Trumbull County Prosecutor, did not draw the warrant.

{¶14} Three months after relator sent its letter to the County Auditor, on July 29, 2014, relator filed the instant petition for a writ of mandamus to compel the Trumbull County Auditor to draw a warrant on the County Treasurer in relator's favor for a refund of excess personal property taxes paid by WCI for tax years 2001, 2002, and 2003. Relator also alleged the Auditor acted in bad faith by not drawing the warrant and asked for an award of its attorney fees. As noted, relator's bankruptcy case remains pending, and relator concedes it filed the instant action to obtain funds with which to pay its creditors in bankruptcy.

{¶15} On October 31, 2014, the District filed a motion to intervene, arguing it had an interest in this litigation as any award in favor of relator would be paid by the Trumbull County Schools, including the District. This court granted the motion, and on February 3, 2015, the District filed its answer.

{¶16} On February 10, 2015, the Auditor and Treasurer filed their combined answer, denying the material allegations of relator's petition.

{¶17} On February 24, 2015, the District filed its motion for summary judgment with the affidavit of its counsel and evidentiary materials in support. Relator filed a brief in opposition to the District's motion with evidentiary materials in support. The District then filed its reply brief.

**{¶18}** Relator, the County Auditor, and the County Treasurer have stipulated that a refund totaling $658,316 is owed as a result of the Auditor's reassessed valuations of WCI's personal property for the tax years 2001, 2002, and 2003. However, they did not stipulate that this amount was owed *to relator*. Further, despite this stipulation, relator now argues it is also owed accumulated interest, bringing the total amount of the refund, in its view, to more than $1,200,000.

**{¶19}** The District argues it is entitled to summary judgment on relator's petition in mandamus because there are no genuine issues of material fact and, as a matter of law, relator does not own WCI's tax refund claim and is not entitled to the tax refund.

**{¶20}** Summary judgment is a procedural device intended to terminate litigation and to avoid trial when there is nothing to try. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358 (1992). Summary judgment is proper when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 268 (1993).

**{¶21}** The party seeking summary judgment on the ground that the nonmoving party cannot prove his claim bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the elements of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).

6

{¶22} The moving party must point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support his claim. *Dresher, supra*, at 293.

{¶23} If this initial burden is not met, the motion for summary judgment must be denied. *Id.* However, if the moving party has satisfied his initial burden, the nonmoving party then has a reciprocal burden, as outlined in Civ.R. 56(E), to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against him. *Dresher, supra.* The issues raised by the District in its motion are matters of law, and summary judgment is a proper method of determining such matters. *Fireman's Fund Ins. Co. v. Mitchell-Peterson, Inc.*, 63 Ohio App.3d 319, 327 (12th Dist.1989).

{¶24} We now turn to the District's arguments in support of its entitlement to summary judgment.

{¶25} **First, the District argues that relator has no right to the tax refund of WCI, relator's alleged predecessor, because WCI waived and released the right to recover its tax refund in its plan of reorganization.**

{¶26} As noted above, WCI filed its bankruptcy petition under Chapter 11 of the Bankruptcy Code. Because the characteristics of such proceedings play a part in the disposition of this case, a few general comments about those proceedings are in order. Chapter 11 generally provides for reorganization of a business in financial distress. 1 Collier on Bankruptcy (16th ed.), ch 1, ¶1.07. A Chapter 11 case begins with the filing of a petition in the bankruptcy court. *Id.* The debtor must also file schedules of his assets and liabilities and a statement of financial affairs. *Id.* Upon filing such petition,

the debtor becomes a "debtor in possession," meaning that the debtor keeps possession and control of its assets while undergoing a reorganization under Chapter 11 without the appointment of a case trustee. *Id.* The debtor remains a debtor in possession until the debtor's plan of reorganization is confirmed at which time the case is closed. *Id.* The debtor in possession operates the business and performs the functions that a trustee performs in cases under other chapters of the Bankruptcy Code. *Id.* Ultimately, the debtor must file a proposed plan of reorganization aimed at keeping its business alive and pay creditors over time. *Id.* The court conducts a hearing to determine whether to confirm the plan and, if the plan is confirmed, the debtor is discharged from any debt that arose before the date of confirmation. 11 U.S.C. Section 1141(d)(1). After the plan is confirmed, the debtor is required to make payments under the plan. Collier, supra. The confirmed plan creates new contractual rights, replacing or superseding pre-bankruptcy contracts. *Id.*

{¶27} The Bankruptcy Code empowers the trustee or debtor in possession to recover property of the bankruptcy estate held by others by way of a "turnover" or recovery action, which is conducted by the bankruptcy court. *In re Challenge Air Int'l, Inc.*, 123 B.R. 661, 663 (Bankr.S.D.Fl.1990), *affirmed* (D.C.S.D.Fl.1991); 11 U.S.C. Sections 542, 1107(a); *In re Outdoor Displays Welding & Fabrication, Inc.*, 84 B.R. 260 (Bankr.S.D.Ga.1988); *In re Viking Offshore (USA), Inc.*, 405 B.R. 434 (Bankr.S.D.Tex.2008). The United States Supreme Court has held that a tax refund is property of the debtor and thus included within the bankruptcy estate. *Kokoszka v. Belford*, 417 U.S. 642, 647 (1974), citing *Segal v. Rochelle*, 382 U.S. 375, 380 (1966). Either a trustee or a debtor in possession can bring a turnover action under 11 U.S.C.

Section 542 to recover a tax refund for the estate. *In re Meyers*, 616 F.3d 626, 627 (7th Cir.2010); *Challenge Air, supra.*

{¶28} The District argues that relator does not own the tax refund claim at issue here because, under Section 5.5 of WCI's plan of reorganization, the claim was waived and released. Section 5.5 of WCI's plan of reorganization provides, in pertinent part:

{¶29} Reorganized WCI waives the right to prosecute and releases any *

\* \* recovery actions under Bankruptcy Code Section \* \* \* 542 \* \* \*

that belong to or could have been raised by or on behalf of [WCI].

{¶30} The District argues that, pursuant to Section 5.5 of WCI's plan, Reorganized WCI, the party that acquired WCI Steel's assets, waived and released the right to prosecute any recovery action under 11 U.S.C. Section 542 that belonged to or could have been raised by WCI, which included WCI's claim for the subject tax refund. Further, the District argues that because relator claims it is the successor to WCI's tax refund claim, relator stands in the shoes of WCI and is likewise deemed to have waived it. Thus, the District argues that relator does not own and is not entitled to the tax refund.

{¶31} Resolution of this issue requires an interpretation and analysis of Section 5.5 of WCI's plan of reorganization. Once confirmed, a Chapter 11 plan of reorganization acts like a contract that binds the debtor and all parties that participate in the plan. *In re Dial Business Forms*, 341 F.3d 738, 743 (8th Cir.2003); 11 U.S.C. Section 1141(a). As such, the plan should be construed as a contract. *See In re Blanton*, 78 B.R. 442, 444 (Bankr.D.S.C.1987). "Generally, if the terms of a contract are clear and unambiguous, [a court] must enforce the contract according to its terms \* \* \*."

9

*In re Georgetown Steel Co., LLC,* 318 B.R. 313, 321 (Bankr.D.S.C.2004). The construction of a contract is a question of law and thus properly determined on summary judgment. *Hiller v. Ohic Ins. Co.*, 11th Dist. Trumbull No. 2005-T-0112, 2006-Ohio-4536, ¶13; *Fireman's Fund Ins. Co., supra.*

{¶32} Relator concedes that a tax refund is recoverable via a turnover or recovery action under 11 U.S.C. Section 542 and that Section 5.5 of WCI's plan of reorganization waived and released the right to prosecute any recovery action under 11 U.S.C. Section 542 that belonged to or could have been raised by WCI. However, relator argues that turnover actions are not available to debtors in possession and that, because WCI was a debtor in possession in a Chapter 11 case, a turnover action was not available to it. Relator cites no case law in support of this argument. In fact, the Legislative Comments to 11 U.S.C. Section 542 provide that turnover is available to a trustee or to a debtor in possession. Moreover, it is well-settled that either a trustee or a debtor in possession in a Chapter 11 case can bring a turnover action to recover assets of the estate. *Meyers, supra*; *Challenge Air, supra*; *Outdoor Displays, supra;* 11 U.S.C. Sections 542, 1107(a); *Viking Offshore, supra.*

{¶33} Further, relator argues that 11 U.S.C. Section 542 does not apply to *disputed* debts and that, since WCI's tax refund claim was still disputed by the Tax Commissioner when WCI's plan of reorganization was confirmed in 2006, the claim could not be pursued as a Section 542 turnover action and, thus, the claim was not waived pursuant to Section 5.5 of WCI's plan.

{¶34} However, a claim does not have to be undisputed for it to be the subject of a turnover action under 11 U.S.C. Section 542. *In re Willington Convalescent Home,*

10

*Inc.,* 850 F.2d 50, 52, fn. 2 (2d Cir.1988).  In *Willington*, the bankruptcy trustee filed a turnover proceeding under 11 U.S.C. Section 542(b) to recover a money judgment for services sold on account against the Connecticut Department of Revenue Services. That section of the Bankruptcy Code provides that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to the trustee * * *."

**{¶35}** Similar to relator's argument here, in *Willington*, the state of Connecticut argued the action was a disputed contract claim for damages and therefore was not a Section 542(b) proceeding.  The Second Circuit rejected Connecticut's argument, holding the mere fact that Connecticut was disputing the debt for the debtor's services did not take the trustee's action outside the scope of 11 U.S.C. Section 542(b). *Willington, supra,* citing *In re Rawson*, 40 B.R. 167, 169 (Bankr.N.D.Ohio 1984).

**{¶36}** In *Rawson*, the plaintiff trustee for the debtor's estate filed a complaint against defendants, claiming breach of contract and turnover of property of the estate. The trustee alleged that, in exchange for the debtor's partnership interest, the defendant agreed to pay, but failed to pay, certain debts of the debtor.  The defendant argued this action could not be brought under Section 542(b) because he did not owe a debt that was "matured or payable on demand."  The Bankruptcy Court for the Northern District of Ohio rejected this argument, holding the trustee's complaint alleged the defendant owed a matured debt within the scope of Section 542(b), despite the fact that the defendant disputed the debt. *Rawson* at 169.

11

**{¶37}** Other bankruptcy courts in the Sixth Circuit have followed *Rawson*. For example, in *In re Lee Way Holding Co.*, 105 B.R. 404 (Bankr.S.D.Ohio 1989), the United States Bankruptcy Court for the Southern District of Ohio held:

> **{¶38}** The key issue in an action brought under 11 U.S.C. Section 542(b) is whether or not at the time of the commencement of the case, there was a debt which was matured, payable on demand, or payable on order. *In re R.I. Lithograph Corp.*, 60 B.R. 199 (Bankr. D.R.I.1986). The mere fact that the defendants deny the allegations of the plaintiffs' complaint does not render the plaintiffs' action improper under 11 U.S.C. Section 542. *Lee Way* at 414.

**{¶39}** In addition, in *In re Kids World of Am., Inc.*, 349 B.R. 152 (Bankr.W.E.Ky.2006), the United States Bankruptcy Court for the Western District of Kentucky similarly held:

> **{¶40}** The fact that a defendant may deny the existence of a debt is irrelevant as "long as * * * allegations state the existence of a mature debt." *In re Cambridge Capital, LLC*, 331 B.R. 47 (Bankr.E.D.N.Y. 2005), internal citations omitted. * * * A dispute as to the existence of a debt is a question that can be decided during the course of a turnover proceeding.

> **{¶41}** * * * The Defendant's denial that the debt exists does not make the debt "unmatured" and/or not "payable on demand." * * * [T]he existence of a debt is a distinct inquiry from whether a debt is matured. If a court determines that a debt would be matured and

12

payable on demand, it is a turnover action despite the fact that the parties dispute whether the debt exists. To hold otherwise would mean that a defendant could defeat all turnover claims by merely denying that money was owed. Taking into consideration the Plaintiff's allegations coupled with the evidence presented, the Defendant's mere denial of the debt is insufficient to prevent the turnover action from proceeding in this Court. *Kids World* at 163 – 164.

{¶42} Thus, contrary to relator's argument, although the Tax Commissioner was still disputing WCI's tax refund claim when WCI's plan of reorganization was confirmed in 2006, the tax refund was subject to a turnover proceeding.

{¶43} Further, contrary to relator's argument, Section 9.11 of WCI's plan of reorganization did not grant to Reorganized WCI the right to prosecute any tax claim. Rather, that section, which is entitled "Tax Information Sharing," merely provided that if a tax proceeding is initiated involving WCI, the named entities agree to share any information requested for the prosecution or defense of such claim.

{¶44} In summary, Section 5.5 of WCI's plan of reorganization clearly and unambiguously provides that Reorganized WCI waives the right to prosecute and releases any recovery action under Section 542 of the Bankruptcy Code that belonged to or could have been raised by WCI. Because WCI's pending tax refund claim could have been asserted as a turnover or recovery action, pursuant to WCI's plan of reorganization, WCI waived and released the right to continue to prosecute its claim. And, since relator is asserting WCI's tax refund claim as WCI's purported successor,

13

relator is likewise deemed to have waived it. *Continental Ins. Co. v. M.B. Operating Co.*, 5th Dist. Stark Nos. CA 7176, CA 7181, 1987 Ohio App. LEXIS 8846, *4 (Sep. 21, 1987) (holding an assignee stands in the shoes of the assignor and has no greater rights than the assignor).

{¶45} We therefore hold that relator failed to demonstrate the existence of a genuine issue of material fact and that, as a matter of law, it is deemed to have waived WCI's right to prosecute its tax refund claim.

{¶46} **Second, the District argues that relator's claim is barred by res judicata.**

{¶47} The District also argues that because the tax refund claim could have been, but was not, reserved in WCI's plan of reorganization, the bankruptcy court's order confirming the plan was the final judgment for purposes of res judicata, and barred further enforcement of the claim.

{¶48} A civil claim is barred by the res judicata effect of prior litigation if all of the following elements are present: (1) a final judgment; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action that was or could have been litigated in the prior action; and (4) an identity of the causes of action. *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir.1997). The application of the doctrine of res judicata is a question of law and thus properly determined on summary judgment. *State v. Orth*, 106 Ohio App. 35 (3d Dist.1957), paragraph two of the syllabus.

{¶49} "As a general rule, the 'confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings.'" *Browning v. Levy*, 283 F.3d 761, 772 (6th

14

Cir.2002), quoting *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir.1992). "Such confirmation by a bankruptcy court 'has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings.'" *Browning, supra*, quoting *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir.1991).

{¶50} However, res judicata does not apply where a claim is either adjudicated in the earlier bankruptcy proceeding or "expressly reserved by the litigant" in its reorganization plan or confirmation order. *Browning, supra*, at 774. Obviously, WCI's tax refund claim was not litigated in the bankruptcy court and was still pending in the state court system when WCI's plan of reorganization was confirmed. Thus, in order to avoid the effect of res judicata, WCI's plan of reorganization or the court's order confirming the plan must have expressly reserved WCI's right to continue to prosecute the tax refund claim. *Id.*

{¶51} Contrary to relator's argument, the District does *not* concede that its res judicata argument is derivative of and thus based on the waiver provision in WCI's plan of reorganization. Rather, the District argues, and we agree, that res judicata provides an additional and separate basis for summary judgment.

{¶52} Relator does not dispute the res judicata effect of the confirmation order entered in WCI's bankruptcy case. Rather, relator again argues that Section 9.11 of WCI's plan of reorganization evidences an "intent to preserve" the tax claim. However, nothing in that section supports this argument. As noted above, Section 9.11, entitled

15

"Tax Information Sharing," did not grant to Reorganized WCI the right to pursue any tax refund claim.

{¶53} Relator also argues that a "plain reading" of Section 9.11 of the plan shows that WCI reserved the right to prosecute any claim relating to taxes. However, as noted, that section is not a general reservation of rights to pursue any claim relating to taxes. In any event, even if Section 9.11 was a general reservation of rights, it is well settled that "a general reservation of rights does *not* suffice to avoid res judicata. *Browning, supra*; *D & K Props. Crystal Lake v. Mutual Life Ins. Co.*, 112 F.3d 257, 260 (7th Cir.1997) (holding that the debtor's attempted reservation of rights lacked the specificity required to reserve a cause of action).

{¶54} In *Browning*, *supra*, the debtor sued his attorney for legal malpractice after the debtor's Chapter 11 bankruptcy plan was confirmed and the case closed. The malpractice claim arose from the attorney's representation of the debtor before the debtor filed for reorganization under Chapter 11. The Sixth Circuit affirmed the district court's summary judgment in favor of the attorney on the basis of res judicata because the debtor's general reservation of rights (reserving any claim the debtor may have arising under 11 U.S.C. Section 542) in its plan of reorganization did not suffice to avoid res judicata. *Id.* The Sixth Circuit held that the debtor's blanket reservation was insufficient to avoid the application of res judicata to its claim against the attorney because the reservation (1) did not name the defendant or (2) state the factual basis for the reserved claim. *Id.* at 775.

{¶55} Because WCI did not expressly reserve its tax refund claim in its plan of reorganization and relator, as claimed successor of WCI, stands in its shoes, relator

16

failed to demonstrate the existence of a genuine issue of fact regarding whether its petition was barred by res judicata.

**{¶56}** In opposing the District's waiver and res judicata arguments, relator argues that if WCI intended to release the claim, WCI would not have incurred the cost of its tax appeal. However, WCI's subjective intention is irrelevant in light of the waiver provision in WCI's bankruptcy plan and WCI's failure to expressly reserve the claim in its plan, resulting in res judicata. Regardless of whether these actions and omissions by WCI were the result of inadvertence or strategy, which is mere speculation at this point, the bankruptcy court's confirmation of WCI's plan in 2006 extinguished for all time any right of WCI (or any claimed successor) to the tax refund.

**{¶57}** Further, relator argues that, because on October 19, 2006 (five months after WCI's plan was confirmed), WCI entered installment agreements with the Trumbull County Treasurer, which gave WCI four years to pay its delinquent personal property taxes, this shows that Reorganized WCI acquired WCI's tax refund claim. However, WCI was obligated by the terms of its plan of reorganization to pay the *full* amount of its delinquent taxes, regardless of any tax refund claim. Moreover, Reorganized WCI could not have acquired that claim because it was extinguished in WCI's plan of reorganization long before these payment plans were entered.

**{¶58} Third, the District argues that relator cannot prove by the requisite standard of proof that it is entitled to a writ of mandamus.**

**{¶59}** In order to be entitled to a writ of mandamus, a relator must establish: (1) a clear legal right to the relief sought, (2) a clear legal duty on the part of the respondent to perform the requested act, and (3) the lack of an adequate remedy in the ordinary

17

course of the law. *State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.*, 108 Ohio St.3d 432, 2006-Ohio-1327, ¶34. The relator bears a *heavy burden* in a mandamus case and must submit facts and produce proof that is plain, clear, and convincing before a court is justified in using the "strong arm of the law" by granting a writ of mandamus. *State ex rel. Pressley v. Indus. Comm. of Ohio*, 11 Ohio St.2d 141, 161 (1967). Further, mandamus is an extraordinary remedy that is to be exercised with caution and issued only when the right and duty are *absolutely clear*; the writ will not issue in *doubtful* cases. *State ex rel. E. Cleveland v. Norton*, 8th Dist. Cuyahoga No. 98772, 2013-Ohio-3723, ¶2, citing *State ex rel. Taylor v. Glasser*, 50 Ohio St.2d 165 (1977). Further, the relator must establish a "plain dereliction of duty" on the part of the public official before the writ may be awarded against him. *State ex rel. Stanley v. Cook*, 146 Ohio St. 348, 364 (1946).

{¶60} The District presented evidence that relator has no legal right to the tax refund or to compel the Auditor to issue the warrant relator seeks. That right was waived and released by Reorganized WCI in WCI's plan of reorganization. In addition, the claim was barred by res judicata because the claim was not expressly reserved in the plan or confirmation order. Moreover, relator has not produced any pertinent evidence disputing the District's right to summary judgment on either of these grounds. Thus, relator has failed to produce "plain, clear, and convincing proof" that its right to a writ of mandamus is "absolutely clear." *Norton, supra*.

{¶61} One final point merits attention. We note that relator has asserted inconsistent positions in this litigation regarding the source of its entitlement to the tax refund. In its petition, relator alleged it is the successor in interest to WCI's tax refund.

18

Consistent with that position, in relator's March 13, 2015 motion for leave to respond to the District's motion for summary judgment, relator stated that in its petition for a writ of mandamus, it alleged it "is the successor-in-interest to a personal property tax refund (the 'Tax Claim') originally owed to WCI Steel, Inc.," and insisted that it "has **not** alleged and is **not** alleging, that it is the successor-in-interest to WCI Steel, Inc., as an entity." (Emphasis sic.) In other words, relator alleged it was a successor to WCI's claim by way of an assignment or some other contract between WCI and relator *specifically transferring the tax refund claim to relator*. However, in its opposition to summary judgment, the sole ground on which relator argues it is the successor to WCI's tax refund claim is that it is the successor in interest to WCI as an entity, the very position it insisted in its previous filings that it was not asserting. These inconsistent positions regarding the basis of relator's alleged ownership of the tax refund claim underscore relator's inability to prove it has a *clear legal right* to the tax refund or that the County Auditor was "plainly derelict" in his duty by not issuing a warrant for its payment to relator.

{¶62} Pursuant to the foregoing analysis, relator has failed to establish the existence of a genuine issue of material fact regarding its ownership of the tax refund or its entitlement to it, and, as a matter of law, the District is entitled to summary judgment and the writ is denied.

{¶63} While this case was pending, respondents, Adrian S. Biviano, Trumbull County Auditor, and Sam Lamancusa, Trumbull County Treasurer, filed a motion for summary judgment joining in the motion for summary judgment filed by the District. In support of their motion, the auditor and treasurer state that the defenses and arguments

asserted in the District's motion are the same as those of the auditor and treasurer. Accordingly, the auditor and treasurer adopt the memorandum, arguments, and evidentiary materials filed by the District in support of its motion. For the reasons stated herein, as a matter of law, the auditor and treasurer are also entitled to summary judgment and the writ is denied. The motion for summary judgment filed by the District and the joint motion for summary judgment filed by the auditor and treasurer are therefore granted and summary judgment is entered in their favor and against relator on its petition for writ of mandamus.


DIANE V. GRENDELL, J., CYNTHIA WESTCOTT RICE, J., THOMAS R. WRIGHT, J., concur.